**UNITED STATES of America, Plaintiff,**

v.

**ONE SINGLE FAMILY RESIDENCE LOCATED AT 2901 S.W. 118TH COURT, MIAMI, FLORIDA, etc., Defendant.**

No. 86–739–Civ.

United States District Court,
S.D. Florida.

March 11, 1988.

Guy Harrison, Miami, Fla., for plaintiff.

Alan Ehrlich, Plantation, Fla., Bruce David Green, Ft. Lauderdale, Fla., for Claimant.

ORDER GRANTING U.S.A's MOTION FOR SUMMARY JUDGMENT AND DENYING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the parties' cross-motions for summary judgment. The Court has considered the motions, the pertinent portions of the record, and has heard oral argument by counsel after due notice, and being otherwise fully advised in the premises, the Court renders herewith its memorandum opinion GRANTING plaintiff U.S.A.'s motion for summary judgment, and DENYING Claimant's motion for summary judgment.

### Undisputed Factual Background

The parties do not dispute the material facts. On October 28, 1985, Miguel Alvarez appeared before United States Magistrate Charlene H. Sorrentino for the setting of bond following his arrest three days before for possession of cocaine with intent to distribute. The Magistrate set a $50,000 corporate surety bond. She also determined that Alvarez had about $50,000 equity in his home, and that a hearing pursuant to *United States v. Nebbia*, 357 F.2d 303 (2d Cir.1966), was unnecessary. Later that day, Claimant American Bankers Insurance Company issued a $50,000 bail bond in Alvarez' favor, and received a contingent $50,000 promissory note and a $50,000 mortgage on Alvarez' home.

Jerry Miller, an agent of the claimant herein, was present at the bond hearing before Judge Sorrentino. The government notes that at the hearing, the Assistant United States Attorney stated that Alvarez was charged with possession of cocaine found in the closet of his home. Also at the hearing, Judge Sorrentino signed the complaint against Alvarez, which contained the allegation regarding the discovery of the cocaine and Alvarez' alleged statement that if the cocaine was found in his home, it must belong to him.

On April 8, 1986, the United States filed this complaint seeking forfeiture of Alvarez' house. Thereafter, on June 9, 1986 Alvarez failed to appear in Court for a scheduled hearing and has since been a fugitive from justice. The Claimant has already paid $50,000 on the forfeited bond to the United States.

### Claimant's Arguments

The claimant advances three arguments in support of its position that its mortgage interest in Alvarez' house is not properly subject to forfeiture. *First*, that it is an innocent owner of the mortgage interest under 21 U.S.C. sec. 881(a)(6)–(7). *Second*, that the government is equitably estopped from bringing this forfeiture action. *Finally*, that Alvarez' constitutional right to bail is undermined by the forfeiture of the bonding company's security.

a. Innocent Owner Exception

While the Supreme Court has acknowledged the broad power of the government to cause title to vest retroactively as of the commission of a crime, the Court has alluded, in dicta, to constitutionally required exceptions to the relation back doctrine. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In *Calero–Toledo*, the Court upheld a Puerto Rico forfeiture statute which would allow the forfeiture of a yacht leased to an individual who used it to transport marijuana. The Court, in the final paragraph of its opinion, noted that the claimant-owner had made no allegation that it "did all that it reasonably could to avoid having its property put to an unlawful use." *Id.* at 691, 94 S.Ct. at 2095.

The Court's conclusion in *Calero–Toledo* that the owner had failed to take adequate precautions was critical, because the Court earlier stated that "it would be difficult to

reject the constitutional claim of an owner.... who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property...." *Id.* at 689–90, 94 S.Ct. 2094–95. The Court, however, has not yet held that the Constitution precludes forfeiture of a truly innocent owner along the lines described in the *Calero–Toledo* dicta.

In any event, Congress has substantially reduced the Court's opportunity to reach this issue, because the federal forfeiture statutes contain innocent owner exceptions. By legislatively enacting an innocent owner exception, Congress has apparently reacted to the same fairness concerns which prompted the Court's discussion in *Calero–Toledo*. The government brought this forfeiture action under sections 881(a)(6)–(7), which each contain exceptions to the forfeitability of the property interest of innocent owners. The government's claim for forfeiture under section 881(a)(6) apparently is that Alvarez' equity interest in the house was the traceable proceeds of an exchange for a controlled substance. Under section 881(a)(7), the government would argue that Alvarez' house is forfeitable because it was used to facilitate an illegal transaction in controlled substances.

Both of these forfeiture sections contain an exception to forfeiture which states "except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed without the knowledge or consent of that owner." The somewhat obtuse wording of the innocent owner exception under section 881 is made clearer by considering a common factual setting.

The exception is most commonly claimed by someone who allows a third party to use their automobile, boat, aircraft or real property, only to "discover" that the third party has used their property to facilitate an illegal drug transaction. The claimant then asserts that the third party's use of his property in the drug transaction was without his "knowledge or consent," and seeks to be exempt from forfeiture as an innocent owner.

While such a defense is entirely appropriate under the law, it is very difficult to establish in practice and the courts routinely uphold the forfeiture of this type of claimant's property under the particular facts and circumstances presented. *See, e.g., One Blue 1977 AMC Jeep CJ–5, VIN J783EA076436 v. U.S.,* 783 F.2d 759 (8th Cir.1986) (mother lends son her car); *U.S. v. 1966 Beechcraft Aircraft Model King,* 777 F.2d 947 (4th Cir.1985) (aircraft owner allows pilot to borrow plane); *U.S. v. One (1) 1984 No. 1 Boat,* 617 F.Supp. 672 (S.D. Fla.1985) (boat owner lends boat to friend); *U.S. v. One (1) 1980 Stapelton Pleasure Vessel,* 575 F.Supp. 473 (S.D.Fla.1983) (ship charterer rents boat).

The government concisely summarizes its position as follows: "Claimant, a purchaser *after* the act giving rise to forfeiture, is not entitled to assert the 'innocent owner' defense." Although the courts in the above cited cases rejected the claimant's assertion of innocent ownership, there is no disputing that their claims of innocence were properly asserted under section 881 because their property interest arose before the illegal act giving rise to forfeiture. By contrast, the government correctly points out that in the present case, the claimant's property interest did not arise until after Alvarez allegedly used his house to facilitate a drug transaction.

The government's argument squarely sets forth the issue of whether a claimant may seek shelter under the innocent owner exception to section 881 even though his purported property interest did not arise until after that property was used in or derived from an illegal drug transaction.[1]

---

1. The Eleventh Circuit has not held that subsequent bona fide purchasers cannot be innocent owners under section 881. In *United States v. $41,305.00 in Currency,* 802 F.2d 1339 (11th Cir. 1986), the court upheld a finance company's intervention as a claimant in a forfeiture suit under section 881(a)(6), based upon the claimant's possible perfected security interest in the property sought to be forfeited. As the court upheld the claimant's intervention on this basis

The starting point for this analysis must be, of course, Congress' own words in enacting section 881. In attempting to fit its claim within the innocent owner exception, the claimant herein would have to argue that Alvarez' illegal "act" of using the house to facilitate a drug transaction or purchasing it with the traceable proceeds from those transactions was "committed" without its "knowledge or consent."

### b. The Relation Back Doctrine

■ In essence, in order for the claimant to be an innocent owner, section 881 must at least allow bona fide transferees of otherwise forfeitable property to avoid forfeiture. Congress has clearly chosen to protect bona fide transferees *after* the illegal act from the criminal forfeiture statute, 21 U.S.C. sec. 853. Under section 853(c), the relation back doctrine is codified so as to vest title in the United States "upon commission of the act giving rise to forfeiture." But importantly, the section goes on to exempt bona fide purchasers from the relation back doctrine's harsh results. Any otherwise forfeitable property which is transferred to a person other than the defendant shall not be forfeited if "he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section."

The Court makes reference to section 853 simply to demonstrate that Congress certainly has not per se precluded bona fide purchasers from avoiding the relation back doctrine. The issue in the present case, of course, is whether the civil forfeiture statute under section 881 similarly allows for a bona fide purchaser to avoid relation back.

Consideration of this issue is complicated somewhat by a 1984 amendment to section 881 which added section 881(h). Section 881(h) codifies the relation back doctrine by indicating that the United States' interest in the property vests "upon commission of the act giving rise to forfeiture." The government argues that the claimant cannot attain the status of an innocent owner because the United States' property interest vested before the claimant's. Thus, the claimant is not an owner of property which can claim innocent owner status.

It cannot be said that the codification of the relation back doctrine at 881(h) logically precludes bona fine purchasers subsequent to the illegal act from being innocent owners under section 881(a)(6)–(7). Reference need only be made to the criminal forfeiture statute to refute this reasoning. In section 853(c) of the criminal forfeiture statute, Congress codified *both* the relation back doctrine and the bona fine purchaser exception. There is no logical contradiction precisely because bona fide purchasers are *exempted* from relation back. The claimant herein would argue that similarly, an innocent owner under section 881 is exempted from relation back for bona fide transactions subsequent to the illegal act.

Claimant cites certain legislative history in support of its position. For instance, in commenting upon the innocent owner exception to section 881(a)(6), Senator Culver explained that "[t]he original language is modified ... in order to protect the individual who obtains ownership of proceeds with no knowledge of the illegal transaction." Congressional Record–Senate, July 27, 1978, p. S23056. Furthermore, Senator Nunn explained that the exception was added "to make it clear that a bona fide party who has no knowledge or consent to the property he owns having been derived from an illegal transaction, that party would be able to establish that fact under this amendment and forfeiture would not occur." *Id.* at S23057.

Congress' enactment of section 881(h), which codified the relation back doctrine subsequent to these Senators' remarks,

---

it did not decide whether intervention would also have been appropriate based upon a judgment lien obtained by the claimant after the property became forfeitable. The court stated that "[w]e doubt that [the finance company] can premise intervention on its judgment lien, however, as that may have arisen after [the defendant's] illegal use of the money." *Id.* at 1346. Given the procedural disposition of the case—the appellate court upheld the claimant's intervention—and the court's statement that it simply "doubts" that intervention would have otherwise been inappropriate, this issue is an open one in this circuit.

provides no clue that Congress had any such intentions. As the legislative history indicates, Congress recognized that relation back "is well established in current law." 1984 U.S.Code Cong. & Admin.News, P.L. 98–473, p. 3398.

Finally, as "proceeds" under section 881(a)(6) necessarily bear the imprimatur of a *prior* illegal drug transaction, Congress' enactment of the innocent owner exception to that section serves to underscore the ability of a subsequent transferee, under certain circumstances, to obtain innocent owner status. The Eleventh Circuit has stated that a subsequent transferee of illegal proceeds can claim no prejudice, because "those who knowingly do business with drug dealers do so at their own risk." *Four Million,* 762 F.2d at 905. But a subsequent transferee of traceable proceeds is entitled to assert the innocent owner defense to forfeiture if it is without actual or constructive knowledge of their tainted history. *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1162 (2d Cir.1986).

The above legislative history and the clear protection of bona fide purchasers under the criminal forfeiture statute amply supports the Court's conclusion that the innocent owner exception to forfeiture under section 881 also protects bona fide purchasers for value. This conclusion requires the Court to determine whether under the facts and circumstances of this case, the claimant bonding company is an innocent owner.

### c. Burden of Establishing Actual Knowledge

■ The claimant under section 881 has the burden of establishing that it was without actual knowledge of the act giving rise to forfeiture. *United States v. One (1) 1982 28' Intern. Vessel,* 741 F.2d 1319 (11th Cir.1984). Furthermore, the court in *Intern. Vessel* stated that the claimant must also demonstrate that it did "all that reasonably could be expected" in order to claim innocent owner status under section 881. *Id.* at 1322 (citing *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663,

689, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974)).

Subsequent to the *Intern. Vessel* decision, the Eleventh Circuit stated that "the application of the statutory 'innocent owner' defense turns on the claimant's actual knowledge, not constructive knowledge." *U.S. v. Four Million, Two Hundred Thousand Fifty–Five Thous.,* 762 F.2d 895, 906 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). But because the claimant in *Four Million* was found to have had actual knowledge that the funds he received were drug-generated, the court left "for another day the question of the applicability of the *Calero–Toledo* dicta to forfeiture actions under 21 U.S.C. sec. 881(a)(6)." *Id.* at 906 n. 24. Consequently, the Court concludes that the claimant must demonstrate both that it lacked actual knowledge and that it did everything reasonably possible.

■ The claimant has utterly failed to meet this burden. By way of affidavit, Miller acknowledges his presence at the bond hearing, but states that he did not "have actual knowledge of or consent to property belonging to Alvarez being used for or derived from illegal drug transactions." While this language traces that of the innocent owner exception to forfeiture discussed below, its meaning is far from certain.

It is not clear whether Miller means that he did not hear the A.U.S.A.'s comments regarding the cocaine found in the house, or that Miller does not believe such comments gave him "actual knowledge" of Alvarez' drug dealings. Miller also disclaims having read the indictment before receiving the mortgage on Alvarez' house. Under Fed.R.Civ.P. 56, in order to successfully oppose a motion for summary judgment, the party which has the burden of proof at trial must make a "showing sufficient to establish the existence of an element essential to that party's case...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607 (11th Cir.1987).

Under *Celotex*, the non-movant is not required to depose its own witnesses, and evidence in the form of affidavits is entirely proper. But the form of the plaintiff's evidence is not at issue; rather, what is at issue is the content—or lack thereof—of Miller's affidavit. Miller's conclusory statement is completely insufficient to support the claimant's burden on summary judgment to present prima facie evidence that it lacked actual knowledge of the connection between the Alvarez house and illegal drugs, or the the claimant took all reasonable steps under *Calero-Toledo*. Miller does not even state that he did not hear the A.U.S.A.'s reference in the courtroom to the cocaine found in a closet in the house. Miller's silence on this point contrasts sharply with his profession that he "specifically heard the Court find that Alvarez owned his home and had some $50,-000.00 equity therein, and that the home was a legitimate source for the bond, and that a Nebbia hearing was unnecessary under the circumstances." (underlining omitted).

■ Furthermore, although the Court's disposition of this issue is entirely complete under the holding of *Celotex*, the Court by no means holds that the bonding company could claim innocent owner status merely by hiding its head in the sand. In other words, even if the bonding company somehow failed to apprise itself of the nature of the charges against a criminal defendant, or of the alleged connection between the potential security and illegal drug transactions, innocent owner status under section 881 is not proper.

The Court's application of the *Calero-Toledo* standard under section 881 is guided by the standard Congress established for bona fide purchasers in a criminal forfeiture proceeding. A bona fide purchaser under section 853(c) is a person who "at the time of purchase was reasonably without cause to believe that the property was *subject* to forfeiture under this section." (emphasis added). The claimant in this case can hardly suggest that it was reasonably without cause to believe that Alvarez' house was subject to forfeiture. If the

bonding company had acted reasonably, it would have fully apprised itself of the allegations against Alvarez before issuing the bond and taking a security interest on his house. Such inquiry would provide ample cause for concern that the house was properly subject to forfeiture.

While the Court is aware of the arguably harsh result in the instant case because the bonding company is left without recourse to the security due to its forfeiture, reasonable inquiry on its part would probably have prompted it to seek other security or not to post the bond. In addition, the apparent unfairness of allowing the government to collect "twice" after Alvarez became a fugitive is refuted soundly by the realization that it would be absurd to allow a criminal defendant to post property sure to be the subject of forfeiture in order to obtain a bail bond. That would allow the criminal defendant to get something for nothing, as the property he offers as security may already be independently owed to the government due to the forfeiture statutes.

### Equitable Estoppel Argument

The claimant's two other arguments in support of its motion for summary judgment are equally unavailing. The claimant argues that the government is equitably estopped from seeking the forfeiture of Alvarez' house. First, claimant states that it relied upon Judge Sorrentino's statement at the bond hearing that Alvarez' house was good and sufficient security for the bond, and that a *Nebbia* hearing was unnecessary. Second, claimant argues that by waiting more than five months to seek forfeiture the claimant was reasonably justified in relying upon its security. Finally, the claimant states that an A.U.S.A. affirmatively assured it that Alvarez' house would not be subject to forfeiture.

■ The legal standard for determining whether the federal government may be equitably estopped from taking a particular action leaves little opening for the claimant to establish equitable estoppel. Equitable estoppel cannot be asserted against the United States regarding actions it takes in

its sovereign capacity. *Deltona Corp. v. Alexander*, 682 F.2d 888, 891–92 (11th Cir. 1982). Furthermore, the Eleventh Circuit has yet to hold whether the so-called "affirmative misconduct" exception to this rule allows for equitable estoppel. *Id.* at 892; *United States v. Context–Marks Corp.*, 729 F.2d 1294, 1297 n. 4 (11th Cir. 1984). Even if such an exception exists, it does not lie for allegations of government silence, acquiescence or even negligence. *Deltona*, 682 F.2d at 892 n. 6.

■ Given the above standard, it is crystal clear that the government's alleged "acquiescence" in the Magistrate's conclusion that the house was a legitimate source of collateral and that a *Nebbia* hearing was unnecessary, is insufficient as a matter of law to state a claim for equitable estoppel against the United States. Similarly, the government's mere delay in bringing the forfeiture action is also insufficient to demonstrate affirmative misconduct on the plaintiff's part. The standard governing reasonable reliance on the part of a professional bonding company precludes an equitable estoppel argument. *United States v. One Parcel of Real Estate*, 683 F.Supp. 1370 (S.D.Fla.1987).

■ Finally, claimant argues that the United States is estopped under the as yet unadopted affirmative misconduct exception due to the A.U.S.A.'s assurance that the government would protect the claimant's interest in the property. The United States denies having made such an assurance. But this factual dispute is not relevant, because even if such an assurance was made, this conversation took place *after* the United States had filed the instant forfeiture action. Claimant fails to explain how the government could be estopped to take an action (seeking forfeiture) as a result of events taking place subsequent to the act alleged to be improper.

■ In addition, this conversation took place in the context of settlement negotiations regarding the estreature of Alvarez' bond following his flight. Claimant suggest that "[a]s a result of the assurances of the United States, Claimant promptly paid the estreature." It should be obvious that claimant paid the estreature because it was independently obligated to do so under the terms of the bond. Furthermore, any settlement statements by the government are inadmissible under Fed.R.Evid. 408. *See also Ramada Development Co. v. Rauch*, 644 F.2d 1097 (5th Cir. Unit B 1981). For purposes of deciding this motion, the Court may consider only "such facts as would be admissible in evidence" under Fed.R.Civ.P. 56.

### Sixth Amendment Right to Bail

■ Claimant lastly suggests that allowing the forfeiture of Alvarez' house will cause a deprivation of the criminal defendant's Sixth Amendment right to bail. As the government correctly notes, there is a serious issue about the claimant's standing to raise this point. But even assuming claimant's standing, the Sixth Amendment is not violated in any manner by allowing the government to seek forfeiture of assets which a criminal defendant has pledged as security for a bail bond. Indeed, the government may directly seek forfeiture of funds from which a defendant intends to post bail, or even funds already posted as bail. *See United States v. $250,000 in United States*, 808 F.2d 895 (1st Cir.1987); and *Kelly v. Springett*, 527 F.2d 1090 (9th Cir.1975).

In the *$250,000* case, the government sought the forfeiture of $250,000 which the criminal defendant had posted as bail pending his appeal from a conviction under federal drug laws. Judge John Minor Wisdom held that the government can seek the forfeiture of a defendant's posted bail money pursuant to section 881(a)(6) upon a showing that the money probably derived from illegal drug transactions. While the defendant did not raise the Sixth Amendment issue, the court's reasoning is relevant and persuasive. The *Kelly* court directly rejected a defendant's argument that the state's seizure of his funds pursuant to a tax lien, and his consequent inability to post bail, denied him of his Sixth Amendment right to bail. 527 F.2d at 1093.

Thereupon, the claimant's motion for summary judgment be, and the same is, hereby DENIED, and the plaintiff's motion for summary judgment against claimant American Bankers Insurance Co. be, and the same is, hereby GRANTED.