951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE 1983 MERCEDES BENZ 380SL, Todd W. Klein, Defendants,
and
Automotive Dealers Exchange, Defendant-Appellant.
 
 No. 89-3123.
 United States Court of Appeals, Sixth Circuit.
 Dec. 20, 1991.
 Before DAVID A. NELSON and RYAN, Circuit Judges, and MEREDITH, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of forfeiture entered under 21 U.S.C. § 881(a)(4) against an automobile used to transport cocaine. The car was owned at one point by a corporation controlled by the father of the drug dealer, but the vehicle was then sold to the appellant Automotive Dealers Exchange (A.D.E.), which leased it back to the father's corporation. Although A.D.E. had no notice of wrongdoing when it purchased the car, the district court held that A.D.E. was without standing to assert an innocent owner defense. We conclude that 21 U.S.C. § 881(a)(4)(C), a subparagraph added by amendment after the events in question but before the district court entered judgment, permits A.D.E. to contest the seizure of the automobile. Accordingly, we shall reverse the district court's judgment.
 
 
 2
 * The defendant vehicle, a 1983 Mercedes-Benz 380SL, was purchased on August 16, 1986, by a young man named Todd Klein. On August 25, 1986, Todd Klein drove the car to a restaurant parking lot where he made a sale of cocaine to an undercover police officer. Klein returned half an hour later to make a second sale of cocaine to the undercover officer. The latter transaction took place in the car itself.
 
 
 3
 On September 5, 1986, title to the car was placed in the name of Regency Motors, a company owned by Todd Klein's father. Three days after the transfer of title, Todd Klein drove the car to and from a meeting at which he negotiated further cocaine sales with the undercover officer. On September 10, 1986, the car was sold to appellant A.D.E., which leased the vehicle back to Regency Motors for one year. Todd Klein continued to drive the car, and he used it on September 11 to go to and from yet another cocaine sale. Todd Klein was later convicted on a plea of guilty to one count of an information charging him with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1).
 
 
 4
 On September 24, 1986, Drug Enforcement Administration agents seized the car as a vehicle "used ... to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" cocaine. 21 U.S.C. § 881(a)(4). In due course the government filed a complaint in the United States District Court for the Southern District of Ohio seeking forfeiture of the car pursuant to § 881(a)(4). The car was sold by the United States Marshal, and the ultimate question in this case is whether the sale proceeds and the interest thereon shall go to the government or to A.D.E.
 
 
 5
 A.D.E. filed a timely answer to the forfeiture complaint, along with a counterclaim. Both parties moved for summary judgment, A.D.E. contending that it had no notice of any wrongdoing when it purchased the car and the government contending that A.D.E. had no standing to assert an innocent owner claim. The matter was referred to a magistrate, who recommended granting the government's motion for summary judgment. Over A.D.E.'s objections, the district court accepted the magistrate's recommendation and entered judgment for the government early in 1989.
 
 
 6
 The Anti-Drug Abuse Act of 1988, Pub.L. No. 100-690, § 6075, 102 Stat. 4181, 4324, was enacted on November 18, 1988, shortly before the magistrate issued his report and recommendation. The act amended 21 U.S.C. § 881(a)(4) by adding the following subparagraph: "[N]o conveyance shall be forfeited under this subparagraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner." 21 U.S.C. § 881(a)(4)(C). The amendment was not cited to either the magistrate or the district judge, and both of them were evidently unaware of it.
 
 II
 
 7
 The Supreme Court has told us that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. School Board, 416 U.S. 696, 711 (1974). There is often an "apparent tension" between this rule and "the generally accepted axiom that '[r]etroactivity is not favored in the law,' " Kaiser Aluminum v. Bonjorno, 110 S.Ct. 1570, 1577, (1990), quoting Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 208 (1988), but no such tension is apparent in the instant case--for this is a case where retroactivity will protect the property rights of the innocent citizen rather than jeopardizing such rights. To apply the 1988 statute to pending civil forfeiture actions would work no "manifest injustice," and there is no "statutory direction or legislative history" counseling against such application. We conclude, therefore, that 21 U.S.C. § 881(a)(4)(C) may be invoked in forfeiture cases pending on or after November 18, 1988. Accord, United States v. One 1980 Bertram 58-Foot Motor Yacht, 876 F.2d 884, 887 (11th Cir.1989).
 
 III
 
 8
 The government argues that the relation-back principle codified at 21 U.S.C. § 881(h)[1] had the effect of vesting title in the United States as of the time of the first drug sale in August, with the result that Regency Motors acquired no title on September 5 and had no title to convey to A.D.E. on September 10. A.D.E., the government contends, thus has no standing to challenge the forfeiture as an innocent owner.
 
 
 9
 The Supreme Court described the relation-back principle thus United States v. Stowell, 133 U.S. 1, 16-17 (1890):
 
 
 10
 "[W]henever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offence is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith." (Emphasis supplied.)
 
 
 11
 Public Law 98-473, § 306(f), 98 Stat.1837, 2051 (1984), which codified the relation-back doctrine at 21 U.S.C. § 881(h), made a corresponding change in 18 U.S.C. § 1963, a criminal RICO forfeiture provision. In discussing the latter change, the pertinent Senate report said this:
 
 
 12
 "Subsection (c) of 18 U.S.C. 1963, as amended by the bill, is a codification of the 'taint' theory which has long been recognized in forfeiture cases. Under this theory, forfeiture relates back to the time of the acts which give rise to the forfeiture. The interest of the United States in the property is to vest at that time, and is not necessarily extinguished simply because the defendant subsequently transfers his interest to another. Absent application of this principle a defendant could attempt to avoid criminal forfeiture by transferring his property to another person prior to conviction.
 
 
 13
 The purpose of this provision is to permit the voiding of certain pre-conviction transfers and so close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were not 'arms' length' transactions. On the other hand, this provision should not operate to the detriment of innocent bona fide purchasers of the defendant's property. Therefore, section 1963(c), as amended by the bill, makes it clear that this provision may not result in the forfeiture of property acquired by an innocent bona fide purchaser." S.Rep. No. 225, 98th Cong., 2d Sess. at 200-01, reprinted in 1984 U.S.Code Cong. & Admin.News at 3383-84 (emphasis supplied).
 
 
 14
 At least as to § 1963(c), the rule in Stowell has thus been modified so that relation back will not undermine sales to "innocent bona fide purchasers."
 
 
 15
 There are no congressional committee reports explicating the text of what became § 881(a)(4)(C). The language of that subparagraph closely tracks that of § 881(a)(6) and (7), however, which paragraphs provide an innocent owner defense with respect to forfeiture of things of value furnished in exchange for controlled substances and real property used to facilitate violations of the drug laws. The protection of § 881(a)(4)(C) is narrower only to the extent that it adds the absence of "willful blindness" to the burden the owner must demonstrate to avoid the forfeiture. It seems reasonable, therefore, to give the language of paragraph (4) an interpretation in harmony with that accorded to paragraphs (6) and (7).
 
 
 16
 The legislative history of paragraph (6), a part of § 881(a) enacted by Pub.L. 95-633, § 301(1), 92 Stat. 3768, 3777 (1978), states that "[t]he term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." 95th Cong., 2d Sess., Joint Explanatory Statement of Titles II and III, reprinted in 1978 U.S.Code Cong. & Admin.News 9518, 9522. This obviously includes an innocent purchaser. Explaining why the innocent owner provision was added, Sen. Culver said on the floor of the Senate:
 
 
 17
 "[I]t was noted that the original language [without the provision] could have been construed to reach properties traceable to the illegal proceeds but obtained by an innocent party without knowledge of the manner in which the proceeds were obtained. The original language is modified in the proposed amendment in order to protect the individual who obtains ownership of proceeds with no knowledge of the illegal transaction." 124 Cong.Rec. 23056 (1978) (remarks of Sen. Culver) (emphasis supplied).
 
 
 18
 Sen. Nunn, who introduced the amendment that became paragraph (6), later added:
 
 
 19
 "[A]t the request of Senator Mathias and Senator Wallop's staff, we did add a provision in the modification to make it clear that a bona fide party who had no knowledge or consent to the property he owns having been derived from an illegal transaction, that party would be able to establish that fact under this amendment and forfeiture would not occur." Id. at 23057 (remarks of Sen. Nunn).
 
 
 20
 The legislative history of paragraph (6) thus makes it very clear that Congress intended to protect innocent owners who acquired property after the occurrence of illegal acts.
 
 
 21
 The legislative history of paragraph (7), a paragraph enacted by Pub.L. 98-473, § 306(a), 98 Stat. 1837, 2050 (1984), indicates the same intent: "This provision would also include an 'innocent owner' exception like that now included in those provisions permitting the civil forfeiture of certain vehicles and moneys or securities." S.Rep. No. 225, 98th Cong., 2d Sess. 215, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3398. The relation-back doctrine was codified by the same statute that added paragraph 7, and the codified version of the doctrine was obviously not intended to operate in derogation of the rights of innocent purchasers under either paragraph 6 or paragraph 7. The structure of the statute provides no reason at all for supposing that the amended version of paragraph 4 was intended to put innocent purchasers in a less favorable position.
 
 
 22
 The cases on which the government relies to support its contention that A.D.E. lacks standing to contest the forfeiture are not controlling here. In United States v. One 1951 Douglas DC-6 Aircraft, 525 F.Supp. 13, 15 (W.D.Tenn.1979), aff'd, 667 F.2d 502 (6th Cir.1981) (per curiam), cert. denied, 462 U.S. 1105 (1983), the district court denied recovery to a claimant who attempted to perfect a lien on a forfeited aircraft that had been used in illegal activity. The decision was grounded on the facts that (a) the claimant attempted to perfect his security interest only after the forfeiture had vested title in the government, and (b) the claimant lacked "innocence" because he had failed to ensure that his son did not use the plane for drug trafficking. 625 F.Supp. at 16. This court affirmed only on the second ground, explicitly declining to express any view on the first. 667 F.2d at 503 n. 1. Furthermore, 49 U.S.C. § 1403(c) provides that no security interest in an aircraft shall be valid until recorded with the Federal Aviation Administration, and the claimant's lien had not been so recorded.
 
 
 23
 The government also relies on dicta in In re Metmor Financial Inc., 819 F.2d 446 (4th Cir.1987), where an innocent mortgagee acquired a lien on the forfeited property before the acts that gave rise to the forfeiture. In a passing reference to United States v. Stowell, the court noted the language therein rejecting the claims of even good-faith purchasers. But Stowell did not deal with the version of the relation-back doctrine codified in the statute before us here, and this aspect of Stowell was not an issue in Metmor. There was no dispute in Metmor that the property would be sold subject to the lien, and the actual holding of the case was that the mortgagee-claimant was entitled to interest from the government as well.
 
 
 24
 The Fourth Circuit has revisited the Metmor dicta in a case involving heirs to the estate of a drug dealer. In re One 1985 Nissan, 300ZX, VIN: JN1C214SFX069854, 889 F.2d 1317 (4th Cir.1989) (en banc). Although the Fourth Circuit said there that it would follow the reasoning of Metmor, the court explicitly declined to consider whether there might be a bona fide purchaser exception. Id. at 1321 n. 4.
 
 
 25
 The Tenth Circuit has held that the relation-back doctrine extinguished the right of the State of Colorado to obtain a sales tax on a drug transaction giving rise to a forfeiture. Eggleston v. Colorado, 873 F.2d 242 (10th Cir.1989), cert. denied, 493 U.S. 1070 (1990). Like the Fourth Circuit, however, the Eggleston court had no occasion to consider the rights of a bona fide purchaser.
 
 
 26
 Two other cases cited by the government are inapposite. The first, United States v. United States Currency Amounting to the Sum of Thirty Thousand Eight Hundred Dollars, 555 F.Supp. 280 (E.D.N.Y.), aff'd mem. 742 F.2d 1444 (2d Cir.1983), dealt only with the question whether a claimant who was not a subsequent purchaser had made a sufficient showing of a possessory or ownership interest in the defendant cash to permit him to contest the forfeiture. In the present case, by contrast, A.D.E. has a certificate of title showing that it is the owner of the automobile. The second case, United States v. $364,960 in U.S. Currency, 661 F.2d 319, 326-27 (5th Cir.1981), does discuss an assignee's standing to challenge a forfeiture, but the question there was whether the defendant cash had been transferred for value, not whether the relation-back principle prevented recognition of the assignment. Indeed, the court remanded the case for a hearing on the validity of the assignment as a factual matter.
 
 
 27
 Finding no direct appellate court authority to the contrary, we hold that one who claims to be a subsequent bona fide purchaser for value and without notice has standing to assert the innocent owner defense under 21 U.S.C. § 881(a)(4)(C. This holding is in accord with the results reached by a number of courts that have considered whether a party that acquires an interest in property subsequent to an illegal act may challenge the forfeiture as an innocent owner. See Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 623, n. 3 (1989) (law firm has standing to challenge criminal forfeiture even though its interest arose after the acts giving rise to the forfeiture); United States v. Banco Cafetoro Panama, 797 F.2d 1154 (2d Cir.1986) (implying that bank that received moneys traceable to drug trafficking may assert innocent owner defense); United States v. One 56-Foot Motor Yacht Named the Tahuna, 702 F.2d 1276, 1279 (9th Cir.1983) (government's legal title not established until after it has complied with the forfeiture procedures mandated by statute, so bona fide purchaser has standing to contest forfeiture); United States v. One Parcel of Real Estate, 715 F.Supp. 360 (S.D.Fla.1989) (bona fide purchasers of real estate without actual or constructive notice that government had filed lis pendens are innocent owners); United States v. One Single Family Residence, 683 F.Supp. 783, 788 (S.D.Fla.1988) (innocent owner exception to forfeiture under § 881 protects bona fide purchasers for value); United States v. One 1976 Chevrolet Corvette, 477 F.Supp. 32 (E.D.Pa.1979) (operation of forfeiture statute against bona fide purchaser violates Fifth Amendment).
 
 IV
 
 28
 It is the owner, under § 881(a)(4)(C), who has the burden of proving that the proscribed acts or omissions were "committed or omitted without the knowledge, consent, or willful blindness of the owner." A.D.E.'s verified claim contains a sworn statement by the company's general manager "[t]hat at no time did A.D.E. have any knowledge or reason to believe that the property in which it claims an interest was being used or would be used in violation of the law." The government has produced nothing to dispute the truth of that assertion.
 
 
 29
 Only once has the government made any suggestion of fault on the part of A.D.E. In the brief accompanying its motion for summary judgment, the government made the bald assertion that A.D.E. "negligently entrusted [the] defendant vehicle to" Todd Klein's father the day before Todd Klein used the vehicle to sell drugs on September 11, 1986. In A.D.E.'s motion for summary judgment, however, A.D.E. again asserted that it "was a 'innocent owner' of the motor vehicle ..." The government's response to this motion, like its brief to this court, made no mention of any fault, arguing only that A.D.E. was not an "owner." The government has pointed to no facts that would entitle it to defeat A.D.E.'s claim, and A.D.E. is entitled to summary judgment as a matter of law. Rule 56, Fed.R.Civ.P.; Celotex Corp. v. Catrett, 477 U.S. 317 (1986).
 
 
 30
 The judgment of the district court is REVERSED, and the case is REMANDED for entry of summary judgment in favor of A.D.E.
 
 
 
 *
 The Honorable Ronald E. Meredith, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 "All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section."