**UNITED STATES of America, Plaintiff,**

v.

**PROPERTY IDENTIFIED AS 3120 BANNEKER DRIVE, N.E., WASHINGTON, D.C., Containing a Two–Story Townhouse, Further Described as Square 4325, Lot 279, Defendant.**

Civ. A. No. 87–2124.

United States District Court, District of Columbia.

Aug. 12, 1988.

Robert E.L. Eaton, Jr., Atty., William O'Malley, Asst. U.S. Attys. and, on brief, John D. Bates, Asst. U.S. Atty., and Jay B. Stephens, U.S. Atty., Washington, D.C., for plaintiff.

Thomas Dyson, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

### Introduction

The following facts are undisputed. On July 6, 1987, Detective Robert J. Flatley of the District of Columbia Metropolitan Police received a tip that a woman was being held against her will at 3120 Banneker Drive, N.E., Washington, D.C., by Calvin Ellis Knox, also known as Calvin "Sonny" Knox. *Affidavit of Sergeant John J. Hickey, Jr. in connection with Applica-* tion for a Seizure Warrant ("First Hickey Affidavit"), 1. Upon receiving this information, the police went to 3120 Banneker Drive, N.E., freed the woman, and arrested Calvin Knox for kidnapping. *Id.* at 2.

When Mr. Knox was searched incident to his arrest, the police discovered a glassine bag containing a white powder in his pocket. *Id.* Both the field test performed by the police and the test subsequently performed at the DEA Laboratories revealed that this bag contained 3 ounces of cocaine. *Plaintiff's Opposition to Claimant's Motion for Summary Judgment*, Exhibits II and III.

This was not the only link the police discovered between Calvin Knox, 3120 Banneker Drive, N.E., and the narcotics trade. The woman who had been held by Mr. Knox told Sergeant John J. Hickey that she had purchased cocaine from Mr. Knox at 3120 Banneker Drive, N.E., "on numerous occasions" during the preceding year. *Affidavit of Sergeant John J. Hickey, Jr.* ("Second Hickey Affidavit"), ¶ 1. According to Sergeant Hickey, the woman had returned to 3120 Banneker Drive, N.E., to purchase additional cocaine, but Mr. Knox would not let her leave until she settled a debt she allegedly owed him. *Id.; First Hickey Affidavit*, at 1. Again according to the police, this woman, while held against her will, observed Mr. Knox and another man "cracking" cocaine and also saw a variety of drug paraphernalia stored inside what appeared to be a dishwasher. *Affidavit in Support of an Application for a Search Warrant*, ¶ 3.

On the basis of the narcotics seized from Mr. Knox at the time of his arrest, and the narcotics and related paraphernalia seen by the woman detained by Mr. Knox, the police obtained a warrant to search 3120 Banneker Drive, N.E., for narcotics and related items. *Plaintiff's Motion for Summary Judgment*, Exhibit II. When the warrant was executed, the police discovered three loaded weapons as well as two vials of "crack" concealed in a clothes dryer. *First Hickey Affidavit*, at 2.

In this suit, the United States of America, pursuant to 21 U.S.C. § 881(a)(6), seeks the forfeiture of 3120 Banneker Street N.E., Washington, D.C., the property owned and allegedly used by Calvin Knox to facilitate the illegal distribution of narcotics. The parties have submitted cross-motions for summary judgment. After considering these motions, the legal memoranda submitted by the parties, the arguments advanced in open court, and the underlying law, the Court must grant plaintiff's motion for summary judgment and must deny defendant's motion for summary judgment.

## PLAINTIFF HAS SHOWN PROBABLE CAUSE THAT THE DEFENDANT PROPERTY WAS USED TO FACILITATE A VIOLATION OF THE NARCOTICS LAWS.

Plaintiff seeks to recover the defendant property under 21 U.S.C. § 881(a)(7), which is a civil forfeiture provision. That statute provides, in pertinent part, that:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in [it]:

(7) All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed without the knowledge or consent of that owner.

The summary judgment inquiry under this statute is not precisely akin to the law of summary judgment that federal courts employ daily. While a court must

... evaluate every summary judgment by viewing the evidence and the inferences therefrom in the light most favorable to the party opposing the motion, ... the 'summary judgment procedures under Rule 56, Fed.R.Civ.P., must necessarily be construed in the light of the statutory law of forfeitures, and particularly the

procedural requirements set forth therein. Those procedures themselves are quite summary, especially when compared to normal civil actions.'

*United States v. One 56–Foot Motor Yacht Named the Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983) (*quoting United States of America v. One 1975 Mercedes 280S,* 590 F.2d 196, 199 (6th Cir.1978) (per curiam)).

Forfeitures under § 881 are governed by the provisions relating to the seizure and forfeiture of property for violations of the customs laws. 21 U.S.C. § 881(d). The procedural requirements under the customs laws, and therefore in civil forfeiture actions, are clear.

The government has the initial burden, and it "need only demonstrate probable cause that [the] property was involved as alleged in violations of the narcotics statutes." *United States v. Brock,* 747 F.2d 761, 762 (D.C.Cir.1984) (per curiam). "Probable cause" is more commonly used in the search and seizure context, but its meaning here is no different: the government must supply evidence that, under the totality of the circumstances, establishes reasonable grounds for believing that the property facilitated the sale of drugs. *See, e.g., United States v. One 1974 Porsche 911–S,* 682 F.2d 283, 285 (1st Cir.1982); *see generally, e.g., Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983).

If the government can show probable cause, the burden shifts to the claimant, who must show by a preponderance of the evidence that the property was not involved in violations of the narcotics law or is otherwise not subject to forfeiture. *United States v. Brock,* 747 F.2d at 762; *see also* 19 U.S.C. § 1615 (forfeiture under customs laws). In contrast to the criminal forfeiture laws, where conviction is a prerequisite for forfeiture of the property, *see* 21 U.S.C. § 853, a property is subject to civil forfeiture even if its owner is acquitted of—or never called to defend against—criminal charges. *See, e.g., United States v. One Clipper Bow Ketch Nisku,* 548 F.2d 8, 10 n. 2. (1st Cir.1977); *United States v.*

*One 1972 Toyota Mark II*, 505 F.2d 1162 (8th Cir.1974); *United States v. One 1977 Pontiac Grand Prix*, 483 F.Supp. 48 (N.D. Ill.1979).[1]

In this case, the government has submitted affidavits that, in pertinent part, are not controverted. Those affidavits establish that the Metropolitan Police Department had been investigating narcotics transactions at 3120 Banneker Drive, N.E. *Second Hickey Affidavit,* ¶ 1. During the course of that investigation, two women informed the police that they had purchased cocaine from Calvin Knox at that address. *Id.* at ¶¶ 1, 2. When the police responded to a call for help at the defendant property, they arrested Calvin Knox and discovered a large quantity of cocaine, more than would be consistent with personal use, on his person. *Id.* at ¶¶ 5–7; *First Hickey Affidavit,* 1. They also discovered a variety of drug paraphernalia in the kitchen of the house. *First Hickey Affidavit,* at 2.

When the police executed a search warrant at the defendant property after Mr. Knox's arrest, they discovered additional evidence of narcotics use or distribution on the premises. They discovered two vials of crack concealed in a clothes dryer, as well as two loaded handguns and a loaded shotgun. *Id.*

On the basis of this undisputed evidence, the Court finds that there is probable cause to believe that 3120 Banneker Drive, N.E., Washington, D.C., was used "to facilitate the commission of a violation" of the narcotics laws. 21 U.S.C. § 881(a)(6).

## DEFENDANT HAS NOT SHOWN THAT THE PROPERTY IS NOT SUBJECT TO FORFEITURE.

In light of the government's showing of probable cause, defendant has the burden of proving that the property was not used to facilitate a narcotics transaction or that, for some other reason, forfeiture is inappropriate. Defendant has advanced several arguments, but they are unavailing.

■ First, defendant maintains that the property is not subject to forfeiture unless the government shows, and the claimant does not refute, that the property was "substantially connected" to the illegal narcotics activity. While defendant admits that this alleged requirement is not articulated in the language of 21 U.S.C. § 881(a)(7), it argues that the statute's legislative history demands this reading. This argument cannot stand.

For one, the argument ignores the cardinal principal that a court may not consider legislative history where a statute is clear on its face. *See, e.g., Board of Governors v. Dimension Financial Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986). This principle controls the issue here. The forfeiture statute unambiguously makes forfeitable "all real property ... which is used, or intended to be used, *in any manner or part,* to commit or facilitate" a violation of the narcotics laws. 21 U.S.C. § 881(a)(7) (emphasis added). Clearly, the property need not be "substantially connected" to the narcotics transaction; any use, in any manner, in connection with the drug trade can result in forfeiture.

But it is no secret that ambiguity may exist even when a statute seems strikingly clear on its face. *See Young v. Community Nutrition Institute,* 476 U.S. 974, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986). Two district courts have implicitly found the statute ambiguous and, based on their reading of § 881(a)(7)'s legislative history, have demanded a "substantial connection" between property and an illegal drug transaction before the property could be forfeited. *United States v. $12,585 in United States Currency,* 669 F.Supp. 939 (D.Minn. 1987); *United States v. Certain Lots in Virginia Beach,* 657 F.Supp. 1062 (E.D.Va. 1987); *see also United States v. 1966 Beechcraft Aircraft Model King Air,* 777

---

**1.** These cases concern forfeitures under 21 U.S.C. § 881(a)(4), which provides for civil forfeiture of conveyances used to transport, or to facilitate transportation of, narcotics. Because the pertinent language in this section is identical to the language dealing with seizure of real property, the body of law developed under § 881(a)(4) is applicable to forfeitures under the real property section, 21 U.S.C. § 881(a)(6).

F.2d 947 (4th Cir.1985) (cited in both cases and interpreting similar language). These cases do not affect the Court's decision. Even if the Court were to find the forfeiture statute ambiguous in some respect, and were to reach the legislative history, nothing in those congressional expressions supports those cases or defendant's argument.

The statutory provision at issue, 21 U.S.C. § 881(a)(6), was enacted as part of the Comprehensive Forfeiture Act of 1984. 98 Stat. 2040. It is true that, as defendant asserts, the Senate Report accompanying this Act noted that the proposed forfeiture statute would lead to the seizure and forfeiture of property "indispensable to the commission of a crime." S.Rep. No. 225, 98th Cong., 1st Sess. 195, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3378. But the Senate interpreted the new forfeiture provisions far more broadly: in the section-by-section analysis of the Senate bill, the Committee noted that the language that would become 21 U.S.C. § 881(a)(7) would provide for forfeiture of "real property *which is used or intended to be used in a felony violation of the Drug Abuse Prevention and Control Act.*" *Id.* at 3398 (emphasis added).

▋ The obvious implications of the Report's language are that property is subject to civil forfeiture if it is used—even if tangentially used—in connection with a drug transaction. As such, it is clear that Congress did not envision a constricted scope for forfeitures; instead, in keeping with the statute's emphasis on deterring drug transactions by attacking the profitability of crime, *see id.* at 3378, Congress

intended the Act to provide for forfeitures of property used in connection with an illegal narcotics trade, regardless of whether the property was "substantially connected" to the deal or not.[2]

The claimant also challenges the forfeiture on grounds related to the nature and amount of the substance seized on the property. Specifically, he questions whether the substance found on the property was cocaine and argues that, even if it truly was cocaine, the substance was for his personal use; he also asserts that forfeiture of the property would be a penalty out of all proportion to the amount of cocaine seized. These arguments do not refute the government's showing of probable cause.

First, the government has provided laboratory reports, together with affidavits documenting the chain of custody of the samples, showing that the white powder found on the property was in fact cocaine. *Plaintiff's Opposition to Defendant's Motion for Summary Judgment,* Exhibits II and III. Defendant has not challenged these findings. Second, Sergeant Hickey, who has had thirteen years of experience as a police officer and six years as a specialist in narcotics investigations, has submitted an affidavit that the three ounces of cocaine seized from Mr. Knox's person "is an amount inconsistent with personal use and is indicative of possession with intent to distribute." *Second Hickey Affidavit,* at ¶ 7. While the claimant states that any cocaine found on the premises was intended for his own use only, *Defendant's Motion for Summary Judgment,* at 6, his bare statement does not establish an issue

---

**2.** The Court must note that the defendant property would be subject to forfeiture even if the government were required to show that the property was "substantially connected" to a felony violation of the narcotics laws. The government has provided uncontroverted affidavits that two women informed the police that they had purchased cocaine at the property on more than one occasion; one of the women told the police that she had purchased cocaine there many times over the course of a year. *Second Hickey Affidavit,* ¶¶ 1, 2. One of those women also told the police that, while held against her will at the property, she observed Mr. Knox and another person "cracking" cocaine in the house;

she also saw what she recognized as drug paraphernalia. *First Hickey Affidavit,* at 1. When arresting Mr. Knox at 3120 Banneker Street, N.E., the police recovered three ounces of cocaine from his person, an amount flagrantly inconsistent with personal use. *Second Hickey Affidavit,* at ¶¶ 5–7. When subsequently searching the premises pursuant to a valid warrant, the police also discovered concealed vials of crack. *First Hickey Affidavit,* at 1–2. In light of these uncontroverted facts, the Court must conclude that the connection between 3120 Banneker Drive, N.E., and felony violations of the narcotics laws is indeed "substantial."

of material fact that would defeat a summary judgment motion. Fed.R.Civ.P. 56(e).

■ Finally, defendant's "proportionality" argument is unavailing. The forfeiture statute is designed to deter narcotics violations by striking at the instruments of crime; it does *not* demand that the value of the property seized by proportional to the value of narcotics seized. *See* 21 U.S.C. § 881(a)(7); *see also* S.Rep. 225, *reprinted in* 1984 U.S.Code Cong. & Admin.News, at 3378. It is the use for crime, and not some dollar-for-dollar calculation, to which the law must look in a forfeiture case.

Defendant also argues that the affidavits submitted by the government are not consistent with each other and therefore cannot be deemed reliable. Like defendant, the Court is aware of some inconsistency in Sergeant Hickey's affidavits. These arise from the fact that Sergeant Hickey in one affidavit states that he personally spoke with the informant during the course of an ongoing investigation into narcotics activity at 3120 Banneker Drive, while in the other affidavit he states that the informant telephoned another police officer. Ultimately, however, this inconsistency is irrelevant to a determination of these motions.

The minor disparities between the affidavits do not create material issues of fact. Regardless of the source of the tip to the police, when the police acted on the tip and arrived at 3120 Banneker Drive, N.E., they found illegal narcotics and related paraphernalia. That is the material fact for the purposes of this case, and it stands unaffected by any small, unrelated disparities in plaintiff's proof.

■ Defendant's final argument challenges the nature of the proof put forth by the government. Specifically, defendant argues that the affidavits rely on statements of admitted drug users and thus depend on hearsay evidence that is inherently unreliable. Moreover, in an attempt to controvert this evidence, defendant has supplied an affidavit from Mr. Knox's common law wife that is intended to show that 3120 Banneker Street, N.W., was not used to ply the narcotics trade. The Court must reject these arguments.

■ The law clearly allows the government to use credible hearsay evidence to establish probable cause for civil forfeiture of property used to facilitate illegal narcotics transactions. *See, e.g., United States v. One 56–Foot Motor Yacht Named the Tahuna,* 702 F.2d 1276, 1283 (9th Cir.1983); *United States of America v. One 1974 Porsche 911–S,* 682 F.2d at 286; *see also, e.g., Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The hearsay evidence on which the government relies in this case is inherently credible. That evidence—statements about drug purchases and use—amounts to admissions made to police officers that the declarants had committed a crime. Such admissions against penal interest are deemed credible hearsay for the purpose of establishing probable cause. *E.g., United States v. Bruner,* 657 F.2d 1278, 1297 (D.C.Cir.1981); *United States v. Davis,* 617 F.2d 677, 693 (D.C.Cir.1979), *cert. denied sub nom. Gelestino v. United States,* 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980).

The affidavit from the claimant's common-law wife offers defendant no more comfort. Ms. Deborah Tibbs avers that she has never observed Mr. Knox selling narcotics at the defendant property. *Tibbs Affidavit,* ¶ 4. But she also avers that she resided at the defendant property only "from 1982 to June 30, 1987." *Id.* at ¶ 1. As the events giving rise to this action occurred on July 6, 1987—a week after Ms. Tibbs moved out of the property—Ms. Tibbs has not controverted plaintiff's evidence: she has said nothing about the use made of the property at the time in question.

In short, the government has met its burden and has established probable cause to believe that 3120 Banneker Drive, N.E., was used to facilitate commission of a narcotics offense. The claimant to this property has not overcome that showing. Nor has he established a genuine dispute of material fact. Accordingly, the Court will, in an Order accompanying this Opinion, grant plaintiff's motion for summary judg-

ment and it will deny defendant's motion for summary judgment.

## CONCLUSION

Through the civil forfeiture statutes, Congress has expanded the nation's war on drugs to every physical object involved in the narcotics trade. Under 21 U.S.C. § 881(a)(7), the government may seek forfeiture of real property that was used in connection with a drug deal. As plaintiff has put forth undisputed evidence that establishes probable cause for finding that 3120 Banneker Drive, N.E., Washington, D.C., was used to facilitate illegal narcotics transactions, and as defendant has not overcome this showing, the Court must grant summary judgment in plaintiff's favor. Accordingly, in a separate Order that will accompany this Opinion, the Court will Order 3120 Banneker Drive, N.E., Washington, D.C., forfeited to the United States of America.

## ORDER

In accordance with the Opinion in the above-captioned case, issued of even date herewith, and for the reasons set forth therein, it is this 12 day of August, 1988,

ORDERED that plaintiff's motion for summary judgment shall be, and hereby is, granted; and it is

FURTHER ORDERED that defendant's motion for summary judgment shall be, and hereby is, denied; and it is

FURTHER ORDERED that the defendant property shall be, and hereby is, forfeited to the United States of America, to be disposed of in accordance with law.