UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF REAL ESTATE LOCATED ON FELLOWS TRACTS C, D, E, AND F OF PINE ISLAND ESTATES, etc., Defendant.

No. 88–8348–CIV–JAG.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

June 27, 1989.

proceeds would be divided between Fuentes and the government.

Elizabeth Ruf Stein and Grisel Alonso, Office of U.S. Atty., Miami, Fla., for plaintiff.

Henry Bolz, III, Kelley Drye & Warren including Smathers & Thompson, Miami, Fla., for claimants Thomas and Peggy Cavenaugh.

Gregory Flanagan, Ocala, Fla., pro se claimant for tracts E and F.

## ORDER

GONZALEZ, District Judge.

This Cause has come before the court upon the cross-motions for summary judgment filed by the plaintiff, United States, and the claimants, Gregory S. Flanagan and Thomas and Peggy Cavanaugh. The motions have been briefed and the court heard oral argument on the motions on May 13, 1989. The court also must consider the government's motion to dismiss the claim of Bobby Hardin at this time.

Gregory Flanagan, an attorney, entered into a joint venture with Bobby Hardin to purchase the subject real estate at a tax deficiency sale. Flanagan denies any notice, actual or constructive, of the any illegal taint on the property. He claims to have made personal inquiries, conducted a record search, and examined a title search performed by an independent firm prior to making the purchase. Flanagan also claims that he questioned Hardin as well as his own employer concerning the subject property. Hardin did reveal that the land had been owned by Panhandle Investments, Ltd., but allegedly did not reveal any evidence of illegal activity in regards to the former owner.

On February 10, 1988, after making a successful bid on the subject property, tax deeds were issued to Flanagan for tracts E and F and to Hardin for tracts C and D.

On July 29, 1988, the United States filed the present forfeiture action. The complaint alleges that the subject land was purchased on October 1, 1981 by Panhandle Investments, Ltd. This Bahamian company was allegedly owned by Thomas Penton. Penton allegedly bought the land to construct a horse farm and build an airstrip to facilitate the transportation of illegal drugs. The forfeiture of the land is predicated on the government's claim that the land was purchased by Penton for Panhandle with the proceeds of illegal drug transactions. Penton has been indicted, but remains a fugitive from justice.

On August 15, 1988, the government caused a notice of lis pendens to be recorded in the Clerk's Office in Marion County, Florida. The lis pendens only names the government as a party. The tract is described by metes and bounds, but no other party such as Panhandle, Penton, Flanagan, or Hardin is noted.

Because Marion County utilizes a grantor-grantee system of indexing title to realty, the Clerk recorded the notice of lis pendens only under the letter "U" of the index for "United States" since no other party was listed. Since a tract index system is not used, an examination of the available grantor-grantee index would not disclose the prior recording of the government's notice of lis pendens.

On August 18, 1988, Flangan instituted an action to quiet title in the Circuit Court for Marion County. After publication and following appointment of a guardian ad litem, the Honorable William Swigert, Judge, entered a final judgment on Septem-

ber 20, 1988 quieting all title in the tracts E and F in Flanagan.

Claimants Thomas and Peggy Cavanaugh decided to purchase tracts C and D from Bobby Hardin. Attorney Flanagan performed a title search on this property in his capacity as issuing agent on an Attorneys Title Insurance Fund policy, and thereafter issued the Cavanaughs a policy of title insurance. Flanagan has filed claims in this forfeiture action to protect his ownership interest in tracts E and F; and also to clear the Cavanaughs' title of any claims they may make under the title insurance policy.

On September 20, 1988, the Cavanaughs purchased parcels C and D and began to construct a residential dwelling thereon. On January 10, 1989, almost four months after the Cavanaughs' purchase and over five months after this action was filed, the United States Marshal posted notice of the forfeiture action on the subject realty and directed the Cavanaughs to cease construction. The government has not published any notice of forfeiture.

For purposes of this motion, the Cavanaughs and Flanagan concede that the government had probable cause to seize the property. The burden shifts, therefore, to these claimants to prove that they are innocent owners pursuant to 21 U.S.C. 881(a)(6).

The government stated at oral argument that it was settling the claim with Flanagan as to his innocent owner status with respect to tracts E and F. These claims will be dismissed. As concerns, the government's motion to dismiss the claim of Bobby Hardin, there was no opposing response filed and it is clear that Hardin has no status to contest the forfeiture as a claimant. In a quitclaim deed dated August 19, 1988, Hardin transferred his interest, if any, to Flanagan in tracts E and F. Further, he sold his interest in tracts C and D to the Cavanaughs in September 1988. Hence, Hardin is not an "owner" within the scope of section 881(a)(6), and has no standing in these proceedings.

The sole issue in this case, therefore, is whether the Cavanaughs are innocent owners under 21 U.S.C. § 881(a)(6).

The government claims that they are not bona fide purchasers from Hardin because of the constructive notice provided by the notice of lis pendens, and the legal effect of said notice pursuant to Fla.Stat. § 48.23.

The Cavanaughs claim that they are innocent owners because they had no *actual* notice of the illegal taint on the land and because the government's notice of lis pendens was improperly recorded.

There is no dispute that Peggy and Thomas Cavanaugh and Gregory Flanagan did not have actual notice of the alleged illegal activities of Panhandle Investments or Thomas Penton. There is also no issue that the claimants did not consent to the alleged illegal activities.

The government's contention that the innocent owner defense is not available to a claimant having constructive notice of alleged illegal activity and possible forfeiture claims is erroneous. The Eleventh Circuit's dicta in *United States v. Four Million, Two Hundred Fifty–Five Thousand Dollars*, 762 F.2d 895, 906 and n. 24 (11th Cir.1985), is instructive. The court stated, "We agree with . . .[the claimant] that the application of the statutory "innocent owner" defense turns on the claimant's actual knowledge, not constructive knowledge." 762 F.2d at 906. However, the court's statement on this issue is not a holding as the evidence in the case supported a finding of the claimant's actual knowledge. *Id.; Cf. United States v. One Single Family Residence, Miami, Florida*, 683 F.Supp. 783, 788 (S.D.Fla.1988) (held claimants must show absence of actual knowledge and acted in every reasonable manner to claim innocent owner status).

The claimants contend that the government's notice of lis pendens was a "wild deed" outside of the scope of a reasonable grantor-grantee search. Given the inherent deficiencies in such a recordation system, the claimants assert that a reasonable title searcher should be able to rely on researching the name indexes under grantor and grantee and no more. The court

doubts that the claimants are correct in maintaining that a diligent title search would not have uncovered the government's notice of lis pendens. A reasonably prudent title searcher should certainly check for any adverse interests caused by liens filed by the local, state, or federal government. Nonetheless, because actual notice is the standard, the court does not reach this issue of constructive notice in this case.

■ Even if constructive notice is the standard, the Cavanaughs still prevail as innocent owners. The government is equitably estopped from denying the claimants' defense under section 881(a)(6). The forfeiture action was filed on July 29, 1988. No notice of publication was ever made. The Cavanaughs purchased the subject realty on September 10, 1988 and began construction of a home thereon. The United States waited until January 10, 1989, to post notice of forfeiture on the property. The Cavanaughs actually and reasonably relied upon their absence of actual notice of any forfeiture claim, and upon the Flanagan title search in purchasing their property and building the home. In doing so they acted as would any innocent owner. The need for certainty of land title is critical to the orderly transfer of property. Surely Congress did not intend to disrupt state regulation of land transfers by enacting the forfeiture provisions in section 881 so as to place all land titles in doubt because of the "relation back" effect of that statute.

■ It is because of the public interest in the need for certainty in title and in the protection of the rights of innocent owners, and because of the relation-back operation of section 881, that due process requires that in a forfeiture action brought pursuant to 21 U.S.C. § 881, the government must actually or constructively seize the subject property and take it into the custody of the court within a reasonable time following the filing of the forfeiture complaint. Failure to act with reasonable promptness combined with the relation-back nature of a forfeiture suit may inequitably impair the rights or interests of innocent parties. Due process requires more than the simple filing of a complaint and the recording of lis pendens.

Because a forfeiture action is *in rem* in nature, it is necessary that the res itself be brought into the jurisdiction of the court within a reasonable period of time following the filing of the action. *Cf.* Federal Rule of Civil Procedure 4(j) (service must be made on an individual within 120 days or that defendant subject to dismissal if no good cause shown). Without the actual seizure, the court is without jurisdiction of the res, and hence of the claim.

In this case, the action was filed on July 29, 1988 yet the U.S. Marshall did not actually seize the property until January 10, 1989. The Cavanaughs purchased the property on September 10, 1988 without actual knowledge of the existence of the government's forfeiture claim.

Had the property been seized and the notice of forfeiture or other process been posted on the property within a reasonable time after July 29, 1988, this litigation might have been avoided.

In any event, had the subject property been posted and in the possession of the court prior to September 10, 1988, it is unlikely that any issue concerning the actual or constructive knowledge of the owners could have arisen.

Having considered the above matters, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED as follows:

(1) The motion for summary judgment filed by the claimant, Gregory Flanagan, is DENIED as moot given the settlement between the parties.

(2) The motion to dismiss claim of Bobby Hardin filed by the government is hereby GRANTED.

(3) The motion for summary judgment filed by the claimants, Peggy and Thomas Cavanaugh, is hereby GRANTED. The court finds that there are no genuine issues of material fact outstanding and that the claimants are entitled to judgment as a

matter of law. Hence, because the Cavanaughs are innocent owners pursuant to 21 U.S.C. § 881(a)(6), judgment is hereby ENTERED in favor of Thomas and Peggy Cavanaugh and against the United States of America.

(4) This cause is hereby DISMISSED.

DONE AND ORDERED.