**UNITED STATES of America, Plaintiff,**

v.

**8848 SOUTH COMMERCIAL ST.,
CHICAGO, ILLINOIS,
Defendant.**

**No. 89 C 3028.**

United States District Court,
N.D. Illinois, E.D.

Sept. 13, 1990.

Anton R. Valukas, U.S. Atty., John S. Brennan, Chicago, Ill., for U.S.

Francis L. Keldermans, McBride, Baker & Coles, Chicago, Ill., for claimant, Steel City Nat'l Bank of Chicago.

Joseph R. Lopez, Chicago, Ill., for claimants, Raul and Reyna Serratos.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This is a civil forfeiture action brought by the United States of America pursuant to 21 U.S.C. § 881(a)(7), arising from the government's seizure of illegal drugs at the tavern and second floor apartment owned in joint tenancy by claimants Raul and Reyna Serratos. The claimants have asserted an affirmative defense of innocent ownership. Pending before the Court is the government's motion for summary judgment. For the reasons set forth below, the government's motion is denied.

### II. FACTS

#### A. Procedural Background

On April 12, 1989, the government filed a verified complaint alleging that the defendant property was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7). Section 881(a)(7) provides for the forfeiture of all real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment." The government's complaint asserts that the property was used to facilitate possession of cocaine with the intent to deliver, an offense which is punishable by more than one year imprisonment. See 21 U.S.C. § 841(a)(1). The complaint specifically alleges that on September 12, 1987, following the execution of two search warrants upon the defendant property, marijuana and cocaine were seized from both the tavern and the second floor residence of the owner of the property. (Complaint ¶¶ 3–5.) The complaint further alleges that officers had seized cocaine during four separate arrests on the premises. (Id. ¶ 6.)

On May 17, 1989, the Hon. Nicholas J. Bua, sitting in this Court's absence, granted the government's ex parte motion for a finding of probable cause. See Order dated May 17, 1989. After reviewing the government's verified complaint, the Court found that there was probable cause to believe that the real property was subject to forfeiture to the United States pursuant to § 881(a)(7). See id. Accordingly, the Court ordered the U.S. Marshal to execute a warrant of seizure and monition pursuant to Rule C of the Admiralty Rules. Id. The Marshal seized the property on May 19, 1989. Raul and Reyna Serratos filed their verified claims of ownership in the property on June 6, 1989 and a verified answer to the government's complaint for forfeiture on June 21, 1989. In their answer, the

claimants deny that the defendant property was intended to be used to facilitate the possession of cocaine with the intent to deliver. (Answer ¶ 9.) As an affirmative defense to the government's complaint, the claimants assert that they are innocent owners of the property, and further allege that there was no probable cause to issue either of the search warrants for the first floor tavern or the second floor apartment.[1] (*Id.*, Affirmative Defenses ¶¶ 1, 2.)

On June 27, 1989, the government filed a motion for summary judgment against the defendant property. In its supporting memorandum, the government correctly asserts that because it has shown probable cause to the satisfaction of the Court at the May 17, 1989 hearing, the burden of proof shifts to the claimants to show by a preponderance of the evidence that the property was not subject to forfeiture. *E.g., United States v. $84,000 U.S. Currency,* 717 F.2d 1090, 1101 (7th Cir. 1983), *cert. denied,* 469 U.S. 836, 105 S.Ct. 131, 83 L.Ed.2d 71 (1984); *United States v. One 1985 BMW 318i, VIN WBAAC8401F0685314,* 696 F.Supp. 336, 339 (N.D.Ill.1988) (Shadur, J.). In the face of the government's motion for summary judgment, this burden requires the claimants to come forward with evidence raising a genuine dispute of material fact with respect to the defenses they have asserted in their answer.

In response to the government's motion, the Serratos have submitted affidavits supporting their assertion that they are innocent owners of the property. However, the government contends that the claimants have not submitted enough evidence to raise an issue of material fact as to whether they lacked knowledge that the property was used to facilitate the drug transactions, and that it is therefore entitled to summary judgment.

### B. *Undisputed Background Facts*[2]

The government and the claimants agree that the real property which is the subject of this forfeiture action is known as 8848 South Commercial Street. (Complaint ¶ 2; Answer ¶ 2; Gov't 12(1) ¶ 1; Claimants' 12(m) ¶ 1.) It is also undisputed that Raul and Reyna Serratos own the property in joint tenancy. (Raul Aff., July 11, 1989, ¶ 1; Claimants' Mem. at 4.)

The parties further agree that on September 12, 1987, Chicago police officers executed two search warrants at the property. The first warrant was for the second floor residence of the owners of the property and the second warrant was for the first floor tavern, known as the "Casa Blanca". (Complaint ¶ 3; Answer ¶ 3; Gov't 12(1) ¶ 2; Claimants' 12(m) ¶ 2; *see also* Gov't Mem. at 2.) Upon executing the warrant for the second floor residence,[3] the police

1. Claimants have not filed a motion to suppress evidence seized pursuant to the warrants, nor have they taken any action to challenge the Court's May 17, 1989 determination that probable cause existed to seize the property. Accordingly, the issue of probable cause is not before the Court, and has no bearing upon the resolution of the government's motion for summary judgment.

2. These undisputed facts have been culled from the complaint, the claimants' answer, and the parties' statements of undisputed facts filed pursuant to Local General Rule 12(*l*) and 12(m), as well as the memoranda and affidavits which the parties have filed in support of and opposition to the government's motion for summary judgment.

The government's April 12, 1989 Verified Complaint for Forfeiture is cited as "Complaint"; the claimant's June 21, 1989 Answer to the government's complaint is cited as "Answer". The government's statement of undisputed facts is cited as "Gov't 12(*l*)"; the claimants' response is cited as "Claimant 12(m)". The claimants' affidavits are cited as "Raul Aff., July 11, 1989", "Raul Aff., March 13, 1990", "Reyna Aff., July 11, 1989", and "Reyna Aff., March 13, 1990". The government's memoranda in support of the motion for summary judgment are cited as "Gov't Mem.", "Gov't Reply", and "Gov't Supp.Mem.". The claimants' memoranda in opposition to the motion for summary judgment are cited as "Claimants' Mem.", and "Claimants' Supp.Mem.".

3. The claimants' affidavits suggest that there are more residences than one on the property. In their March 13, 1989 affidavits, claimants indicate that Mr. Serratos rented one of the apartments on the defendant property to Jorge Santiago. (Raul Aff., March 13, 1990 ¶ 5; Reyna Aff., March 13, 1990 ¶ 6.) The claimants' July 11, 1989 affidavits indicate that Mrs. Serratos and her children live in another apartment on the

seized 47.91 grams of marijuana and 5.9 grams of cocaine. (Complaint ¶ 4; Answer ¶ 4; Gov't 12(1) ¶ 4; Claimants' 12(m) ¶ 3; *see also* Gov't Mem. at 2.) The police also seized 2.91 grams of marijuana and 5.16 grams of cocaine from the first floor tavern. (Complaint ¶ 5.) The claimants assert, and the government has not disputed, that Raul Serratos was thereupon arrested on the property.[4] (Raul Aff., July 11, 1989 ¶¶ 3, 4, 5, 6; Reyna Aff., July 11, 1989, ¶ 3; *see also* Claimants' Mem at 3.)

### C. Facts Relating to Claimants' Innocent Ownership Defense [5]

The claimants have repeatedly denied knowledge of most of the government's allegations supporting the forfeiture of the property. (Answer ¶ 8; Claimants' 12(1) ¶¶ 2, 3, 4, 5, 6; Raul Aff., July 11, 1989 ¶¶ 3, 4, 9; Reyna Aff., July 11, 1989 ¶¶ 2, 4, 5; *see also* Claimants' Mem. at 2–5.) Specifically, the claimants assert that prior to Mr. Serratos' arrest on September 12, 1987, they were unaware that their children used drugs and had repeatedly been arrested on drug-related charges and were further unaware that drug use and transactions involving tavern customers and employees as well as other tenants residing at the defendant property had taken place. (*See* Raul Aff., March 13, 1990 ¶¶ 5, 7; Reyna Aff., March 13, 1990 ¶ 3.) As noted above, the government argues that the Serratos' simple claim of ignorance is insufficient to raise a genuine issue of fact in support of their defense of innocent ownership.

(Gov't Reply at 2–4; Gov't Supp.Mem. at 3–4.) In light of this argument, it is necessary to review in detail both the government's assertions as to drug-related activity at the property and the Serratos' assertions that they were unaware of this activity.

In its initial complaint for forfeiture, the government alleged that on September 12, 1987, police officers seized 5.16 grams of cocaine and 2.91 grams of marijuana from the first floor tavern and 5.9 grams of cocaine and 47.91 grams of marijuana from the second floor residence. (Complaint ¶ 4, 5; Gov't 12(1) ¶ 3, 4.) The government further alleged that four separate drug-related arrests and seizures had occurred on the property. (Complaint ¶ 6; Gov't 12(1) ¶ 5.) Claimants responded that they were without knowledge of or consent to the presence of narcotics on their property. (Claimants' 12(m) ¶¶ 2, 3, 4, 5.) The government also alleged that on September 3, 1987, Gerrardo Serratos, the claimants' son and a resident at the defendant property, was arrested upon the discovery that he was in possession of 223 grams of marijuana. (Complaint ¶ 7; Gov't 12(1) ¶ 6.) The claimants responded that they were unaware that their son had been arrested, and asserted that they had neither known of nor consented to his possession of marijuana. (Claimants' 12(m) ¶ 6.)

The government has also submitted a series of police reports which flesh out the

---

second floor of the defendant property. (Raul Aff., July 11, 1989 ¶¶ 3, 6; Reyna Aff., July 11, 1989 ¶ 4.)

**4.** Mr. Serratos states that on June 6, 1988, Cook County Circuit Court Judge Phillip Cary found him "not guilty of possession of cocaine and marijuana found on the property." (Raul Aff., July 11, 1989, ¶ 5.) However, in contrast to the criminal forfeiture laws, where conviction is a prerequisite for forfeiture of property, a property is subject to civil forfeiture even if its owner is acquitted of or never even called to defend against criminal charges. *United States v. One Parcel of Real Estate Located at 7715 Betsy Bruce Lane, Summerfield, N.C.*, 906 F.2d 110, 111–12 (4th Cir.1990); *United States v. One Clipper Bow Ketch NISKU*, 548 F.2d 8, 10 (1st Cir. 1977); *United States v. One 1972 Toyota Mark II VIN RT 63016188*, 505 F.2d 1162 (8th Cir.1974);

*United States v. One 1977 Pontiac Grand Prix VIN 2J5747P137057*, 483 F.Supp. 48, 49 (N.D.Ill. 1979) (Decker, J.). Thus, Mr. Serratos' acquittal is not relevant in this civil forfeiture proceeding.

**5.** The facts set forth in this section are summarized separately because they bear particularly upon the claimants' defense of innocent ownership. These facts are also culled from the documents set forth in footnote 2 and, to a very limited extent, from police reports which were submitted by the government on March 2, 1990. Claimants have not disputed these facts insofar as they concern the drug-related arrests which took place at the property or which otherwise involved their children. As the Court has noted, however, claimants do maintain that they were unaware of such activity until Mr. Serratos' arrest on September 12, 1987.

allegations of the complaint as to drug trafficking at the property. Before proceeding further, some explanation of the circumstances under which these reports were submitted to the Court is necessary.

As noted above, the government took the position in moving for summary judgment that because it had already demonstrated to the satisfaction of the Court the existence of probable cause to forfeit the property, based upon the allegations set forth in the verified complaint, the burden now shifted to the claimants to come forward with evidence demonstrating that the property was not subject to forfeiture. The claimants invoked the innocent ownership defense in response to the motion, and tendered affidavits denying knowledge of any drug-related activity which had taken place on their property. In reply, however, the government contended that these simple denials were insufficient, and that the claimants were obliged to come forward with evidence affirmatively demonstrating their lack of knowledge in order to preclude the entry of summary judgment in favor of the government.

The government's position placed the claimants in somewhat of a quandary. In seeking summary judgment, the government had maintained that the defendant property was subject to forfeiture because drugs had been seized on the defendant premises not only on September 12, 1987, but on four prior occasions as well. *See, e.g.*, Complaint ¶ 6; Gov't Mem. at 2, 5. Yet, the complaint alleged nothing more than the fact that seizures of specified amounts of narcotics had taken place; no details as to the dates, times, and circumstances of these seizures were set forth. (*See* Complaint ¶ 6.) The Government's memorandum in support of the motion for summary judgment added nothing further to the record in this respect; it merely paraphrased what had already been alleged in the complaint. (*See* Gov't Mem. at 2.) Given the lack of detail in both the complaint and the government's memorandum as to the circumstances of the seizures in question, the claimants simply could not, as a practical matter, do more than deny in general terms knowledge of any of these prior seizures. (*See* Answer ¶ 6; Claimants' Mem. at 4.)

When the Court itself initially reached the briefing on the motion for summary judgment, it found that the record was not adequate to permit resolution of the motion. Both parties had made reference to the prior narcotics seizures in the briefing to date; yet, it was impossible to glean from the record even such fundamental information as the dates on which the seizures had taken place. In a minute order dated February 16, 1990, the Court acknowledged the government's reference to prior narcotics seizures, and observed that such seizures had some bearing upon the claimants' asserted defense of innocent ownership, citing *United States v. One 1985 BMW 318i, VIN WBAAC8401F0685314, supra*, 696 F.Supp. at 346, and *United States v. One Brown 1978 Mercedes–Benz 450 SEL Vehicle, Identification Number 11603312074960*, 657 F.Supp. 316, 319 (E.D.Mo.), *judgment aff'd mem.*, 837 F.2d 479 (8th Cir.1987). The Court went on to note, however, that the record did not reveal whether the claimants had any relationship to the defendant property at the time of these seizures, or whether the claimants were otherwise on notice that the seizures had taken place. Accordingly, the Court directed the government to file a memorandum fleshing out the circumstances of these seizures and citing relevant authority on how such seizures affected the claimants' innocent ownership defense. The Court also provided the claimants with the opportunity to respond to the government's memorandum.

In response to the Court's order, the government submitted the police reports, which recount in substantial detail drug seizures and arrests that took place on August 27, 1987, September 22, 1987, September 23, 1987, January 21, 1988, and February 5, 1988. Yet another report describes the arrest of Gerrardo Serratos on September 3, 1987 for the possession of marijuana, which arrest is also alluded to in the complaint. (*See* Complaint ¶ 7.) In addition, the government has submitted a criminal history summary for John Serra-

tos, also the claimants' son, which indicates that he was arrested on some twelve occasions between December 28, 1984 and September 27, 1987 for the possession of various drugs, aggravated battery, and robbery. However, the government chose not to submit any affidavits in connection with these reports. Standing alone, the reports constitute unsubstantiated, inadmissible hearsay which the Court cannot properly consider in resolving the motion for summary judgment. *See* page 885, *infra.* Accordingly, the Court has not further summarized their contents here, although the claimants have submitted additional affidavits which speak further to their knowledge and consent vis a vis the illicit activity referenced in these reports.

In support of their innocent ownership defense, the claimants have submitted affidavits in which they consistently deny knowledge of either any drug activity which took place on the property or of their son Gerrardo's arrest for possession of marijuana prior to Raul Serratos' own arrest on September 12, 1987. (Claimants' 12(m) ¶¶ 2, 3, 4, 5, 6; Raul Aff., July 11, 1989 ¶¶ 3, 4, 9; Reyna Aff., July 11, 1989 ¶¶ 4, 5; Raul Aff., March 13, 1990 ¶¶ 5, 7; Reyna Aff., March 13, 1990 ¶ 3; *see also* Claimants' Mem. at 2–5.)

Raul Serratos asserts that he has been separated from his wife for three years and only visits the property once or twice a week. (Raul Aff., July 11, 1989 ¶¶ 2, 4.) Because he does not live there and has never observed anything "suspicious" during his visits to the property, Raul Serratos asserts that he is an innocent owner. (*Id.*; Answer, Affirm.Def. ¶ 1.) Reyna Serratos claims that her husband was responsible for the management of the property, and has paid for all of the utilities and food for his family since their separation. (Reyna Aff., July 11, 1989 ¶ 2; Reyna Aff., March

13, 1990 ¶ 7; *see also* Raul Aff., July 11, 1989 ¶ 4.)

Mr. Serratos admits to a belief that prior to his September 12, 1987 arrest, one of his children or their friends may have stored narcotics on the premises. (Raul Aff., July 11, 1989 ¶ 9.) Mr. Serratos also acknowledges that he learned of the other drug-related arrests which had taken place on the property at the time of his own arrest on September 12, 1987.[6] (Raul Aff., March 13, 1990 ¶ 3.) Mr. Serratos states that he was upset to learn at that time that Gerrardo and John Serratos had been in possession of drugs in or near the property, and informed them that he did not approve of their drug dealing. (*Id.* ¶ 4.) Mrs. Serratos states that although she knew that her sons had been arrested, she had not been aware of the reasons for their arrests or that they had been arrested in front of the property. (*Id.* ¶ 3.)[7] She also confirms that her husband was very upset with the children after his own arrest, and that he warned the children that he would not tolerate any drugs on the property. (*Id.* ¶ 4.)

In response to one of the police reports concerning the September 23, 1988 arrest of one Jorge Santiago on the defendant property, Mr. Serratos admits that he had rented an apartment on the premises to Santiago, and agrees that Santiago was arrested at the property on drug-related charges on September 23, 1988. (Raul Aff., March 13, 1990 ¶ 5.) However, Mr. Serratos claims that he never saw Santiago in possession of drugs and had no reason to believe that he was involved in selling drugs. (*Id.* ¶ 5.) Mrs. Serratos also admits that Santiago was a tenant at the property. (Reyna Aff., March 13, 1990 ¶ 6.) However, she asserts that it was her husband who rented the property to Santiago, and reiterates that it was her husband who controlled the family finances and management of the property and that she made no

---

6. In their July 11, 1989 affidavits, both Raul and Reyna Serratos stated that they had no knowledge of the other seizures which the United States alleged to have occurred on four other occasions at the property. (Raul Aff. July 11, 1989, ¶ 2; Reyna Aff. July 11, 1989, ¶ 5.) However, in Raul Serratos' affidavit of March 13,

1990, he admits that he did learn of the other drug arrests when he was arrested on September 12, 1987. (Raul Aff., March 13, 1990, ¶ 3.)

7. From the police reports, it appears that only John Serratos was arrested in front of the property.

decisions with respect to the property. (*Id.* ¶¶ 6, 7.)

Mr. Serratos also acknowledges learning in early February of 1988 that one Jorge Gomez had been arrested for selling drugs at the Casa Blanca tavern. (Raul Aff., March 13, 1990 ¶ 6.) Mr. Serratos knew Gomez as a customer of the tavern, and believes he went to Puerto Rico after having been arrested on a second occasion. (*Id.* ¶ 6.) Mrs. Serratos claims that she knew Gomez as "a neighborhood drunk" and occasionally saw him enter and leave the tavern. (Reyna Aff., March 13, 1990 ¶ 5.)

In response to the series of police reports showing frequent drug-related arrests at the Casa Blanca tavern, Raul Serratos states that he leased the bar to Gonzalo Perez in 1985 and terminated the lease in January of 1989. (Raul Aff., March 13, 1990 ¶ 1.) Mr. Serratos asserts that he was not a customer of the tavern, and that during his visits to the tavern from 1985 through 1989, he never saw the tavern customers or employees use, possess, or distribute drugs. (*Id.* ¶ 7.) Mrs. Serratos admits knowing that Perez rented the bar from them, but says she only saw him when he entered and left the bar and when he made the monthly rent payments to her. (Reyna Aff., March 13, 1990 ¶ 1.) According to both Mr. and Mrs. Serratos, Perez brought the monthly rent to Mrs. Serratos' second floor apartment because Mrs. Serratos did not like to go into the tavern and Mr. Serratos was not living at the property. (Raul Aff., March 13, 1990 ¶ 2; Reyna Aff., March 13, 1990 ¶ 1.)

In their affidavits, claimants have also made assertions as to the steps which they took to deter the proscribed use of their property. Mr. Serratos states that after the September 12, 1987 seizure and his arrest on that date, he informed all occupants of the property that he did not consent to the sale or storage of narcotics and that he would not permit it to occur on his property. (Raul Aff., July 11, 1989 ¶ 4.) More specifically, he indicates that he told his wife not to tolerate "any of that conduct" from his children or anyone else who

was on the second floor of the premises. (*Id.* ¶ 6.) Mr. Serratos further states that he informed the tavern operator at that time that he would not tolerate him selling narcotics on the premises, in view of advice from his attorney that he might lose the property as the result of such activity. (*Id.* ¶ 6.) Mrs. Serratos likewise states that after her husband's arrest on September 12, 1987, she told her children that she did not approve of their conduct and did not want them to use, sell or store narcotics on the premises. (Reyna Aff., July 11, 1989 ¶¶ 3, 5.)

Mr. Serratos further asserts that after his own arrest on September 12, 1987, he told Perez, the lessee of the tavern, to watch his customers and to make sure that no drugs were sold on the premises. (Raul Aff., March 13, 1990 ¶ 4.) Mrs. Serratos claims to have given Perez a similar warning. (Reyna Aff., March 13, 1990 ¶ 5.) Mr. Serratos indicates that he terminated the lease in early 1989 because Perez "did not do enough to stop his customers from selling drugs or using drugs in the bar". (Raul Aff., March 13, 1990 ¶ 1.)

### III. ANALYSIS

#### A. *Summary Judgment Motions in Forfeiture Actions*

As the Supreme Court has observed, "the inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Civil forfeiture actions under § 881 are governed by the rules relating to the seizure and forfeiture of property for violations of customs laws, 21 U.S.C. § 881(d), and the standards governing summary judgment in civil forfeiture cases must be construed in light of these rules. *United States v. One 56–Foot Motor Yacht Named The Tahuna*, 702 F.2d 1276, 1281 (9th Cir.1983); *United States v. Property Identified as 3120 Banneker Drive N.E., Washington D.C.*, 691 F.Supp. 497, 499 (D.D.C.1988). As set forth above, forfei-

ture actions involve a shifting burden of proof. *United States v. One 1985 BMW 318i, supra,* 696 F.Supp. at 339. Initially, the government must show that probable cause exists to warrant the forfeiture. *United States v. $84,000 U.S. Currency, supra,* 717 F.2d at 1101; *One 1985 BMW 318i,* 696 F.Supp. at 339. In other words, the government must demonstrate at the outset that there are reasonable grounds to believe that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. This showing must be grounded in more than mere suspicion, but need not rise to the level of prima facie proof. *Id.* at 339, 341–42; *United States v. Two Tracts of Real Property, Containing 30.80 Acres, More or Less, With Appurtenances, Located in Bruce Tp., Guilford County, N.C.,* 665 F.Supp. 422, 424 (D.N.C.1987), *judgment aff'd mem. sub nom. United States v. Reynolds,* 856 F.2d 675 (4th Cir. 1988). Once the government meets this test, the burden of proof shifts to the claimant to show by a preponderance of the evidence that the property is not subject to forfeiture. *$84,000,* 717 F.2d at 1101; *One 1985 BMW 318i,* 696 F.Supp. at 339.

■ In the instant case, the Court found probable cause to believe that the property was subject to forfeiture based upon allegations in the verified complaint indicating that narcotics had been found on the defendant premises on September 12, 1987 in both the tavern and in the second floor apartment (Complaint ¶¶ 4, 5), and that four other drug-related arrests and seizures had occurred on the property (Complaint ¶ 6). *Cf. United States v. One Parcel of Real Property Commonly Known as: 3400–3410 West 16th Street, Chicago, Ill.,* 636 F.Supp. 142, 146–47 (N.D.Ill.1986) (Aspen, J.) (verified complaint alleging multiple seizures of cocaine and heroin was sufficient to establish that property was being used to further narcotics activity and, therefore, that there was probable cause to believe the property was subject to forfeiture).[8] Indeed, in their March 13, 1990 supplemental memorandum, claimants concede that the government satisfactorily demonstrated probable cause to believe that the defendant property was used to facilitate illegal drug transactions. (Claimants' Supp.Mem. at 1.) Accordingly, the burden of proof has shifted to the claimants to show by a preponderance of evidence that the property should not be forfeited. *See United States v. Parcel of Real Property Known as 6109 Grubb Road, MillCreek Tp., Erie County, Pa.,* 886 F.2d 618, 622 (3d Cir.1989).[9]

**B. *Innocent Ownership Defense***

■ In response to the government's motion for summary judgment, the claimants have each submitted the affidavits discussed above to support their assertion that they are "innocent owners" of property. 21 U.S.C. § 881(a)(7) states that "no property shall be forfeited ..., to the extent of an interest of an owner by reason of any act or omission established by that owner to have been committed or omitted

---

8. Claimants raise no issue here with respect to the sufficiency of the nexus between the defendant property and the narcotics activity in question. *See United States v. One Parcel of Real Estate Commonly Known as 916 Douglas Ave., Elgin, Ill.,* 903 F.2d 490, 494 (7th Cir.1990), (court's inquiry limited to whether connection between drug transaction and claimant's property was more than incidental or fortuitous).

9. Although claimants concede that probable cause to seize the property has been established, claimants contended in their June 21, 1989 answer to the government's complaint that there was no probable cause to issue any of the search warrants for the first or second floor of the property which were executed on September 12, 1987. Mr. Serratos has subsequently stated in his July 11, 1989 affidavit that his attorney in-

formed him that the search warrant which was executed for the second floor residence indicated that he had previously sold narcotics to an informant. Mr. Serratos denies this allegation. (Raul Aff., July 11, 1989, ¶ 4.) Whatever issues might be raised with respect to the search warrants, the Court must reiterate (*see* n. 1, *supra*) that it need not address them here, because the claimants have not filed a motion to preclude the government's use of any evidence seized in the September 12, 1987 search, developed a record which addresses a determination of probable cause for the issuance of the initial search warrants, or made any argument as to what impact the validity of the search warrants might have upon the questions raised by the government's motion for summary judgment.

without the knowledge or consent of that owner." Thus, to prevail on the "innocent ownership" defense, the claimants must prove by a preponderance of the evidence that whatever drug-related activity took place on their property was without their knowledge or consent. *United States v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborough, Conn.,* 897 F.2d 97, 102 (2d Cir.1990); *United States v. One Parcel of Real Estate Consisting of Approximately 4,657 Acres, Located in Martin County, Fla.,* 730 F.Supp. 423, 426 (S.D.Fla.1989); *United States v. One Parcel of Real Property Known as 3201 Caughey Road, MillCreek Township, Erie County, Pa.,* 715 F.Supp. 131, 133 (W.D.Pa.1989).[10] In the context of the government's pending motion for summary judgment, this burden requires the claimants to establish a genuine dispute of fact by coming forward with evidence from which a reasonable factfinder could conclude that they did not know of or consent to any narcotics-related activity taking place on their property. *See One 1985 BMW 318i,* 696 F.Supp. at 344.

### 1. *Evidence Relating to Knowledge*

Raul Serratos claims that prior to his own arrest on September 12, 1987, he was without knowledge that either the first floor tavern or the second floor apartment were storage and distribution sites for narcotics. (Raul Aff., July 11, 1989 ¶ 3.) He also claims that he had no knowledge of any other drug seizures or arrests on the property. (Raul Aff., July 11, 1989 ¶ 4.) Mrs. Serratos similarly asserts that she had no knowledge that drugs were stored or distributed on the second floor of the property, and that she had never seen her children sell or possess any narcotics on the premises. (Reyna Aff., July 11, 1989 ¶¶ 2, 4, 5.) She also asserts that she was unaware of any previous drug arrests or seizures. (*Id.* ¶ 5.)

In a civil forfeiture action, because it is the claimant and not the government which bears the burden of proof on the "innocent ownership" defense, in order for the government to prevail upon its claim for forfeiture the government need not prove, and the district court need not find,

**10.** It is important to note that courts have framed the elements of the innocent ownership defense in varying ways, depending upon whether the defense has been asserted upon constitutional or statutory grounds. The constitutional basis for the innocent ownership defense was first recognized in *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In that case, the Supreme Court noted that forfeiture statutes might run afoul of constitutional protections to the extent that such statutes required forfeiture of property even when the owner "proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property...." 416 U.S. at 689–90, 94 S.Ct. at 2094–95. Federal courts have typically relied upon *Calero–Toledo* as the authority for an innocent ownership defense when the statutory forfeiture provisions in question made no allowances for the innocent owner. *See One BMW 318i,* 696 F.Supp. at 340 (noting this practice and expressing doubts as to its propriety). However, the authority for the innocent ownership in this case is statutory. Section 881(a)(7) explicitly provides that a claimant's ownership interest in real property will not be forfeited when the illicit conduct on which the forfeiture is premised took place "without the knowledge or consent" of the claimant. Notably, the statute makes no refer-

ence to the second prong of the innocent ownership defense outlined in *Calero–Toledo, i.e.,* the owner's reasonable efforts to prevent the illegal activity from occurring. Consequently, a number of courts, reasoning that Congress could have incorporated such a requirement into the statute had it chosen to do so, have held that a claimant invoking the innocent ownership defense under § 881(a)(7) need not demonstrate reasonable efforts to prevent the proscribed used of the property. *E.g., United States v. Lots 12, 13, 14, and 15, Keeton Heights Subdivision, Morgan County, Ky.,* 869 F.2d 942, 947 (6th Cir.1989); *United States v. One Parcel of Real Estate Consisting of Approximately 4,657 Acres, Located in Martin County, Fla., supra,* 730 F.Supp. at 427–28, *citing United States v. $4,255,-625.39,* 762 F.2d 895, 906 n. 24 (11th Cir.1985) *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). Other courts have interpreted the statute differently, however. Foremost among them is the Second Circuit Court of Appeals, which recently held that the consent prong of the § 881(a)(7) innocent ownership defense embraces the duty to take reasonable steps to prevent illicit activity from occurring on the property. *See United States v. 141st St. Corp.,* 911 F.2d 870, 879 (2d Cir. August 17, 1990). The ramifications of such differences of opinion as to the elements of the innocent ownership defense are discussed in greater detail in Section III(B)(2), *infra.*

that the claimant had actual knowledge of the drug-related activity. *United States v. $4,255,625.39*, 762 F.2d 895, 907 (11th Cir. 1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). *Accord United States v. 1980 Red Ferrari, VIN No. 9A0034335*, 827 F.2d 477, 478 (9th Cir. 1987); *3201 Caughey Road*, 715 F.Supp. at 133. Rather, it is the claimants' responsibility to come forward with evidence demonstrating the absence of actual knowledge. *1980 Red Ferrari*, 827 F.2d at 478; *$4,255,625.39*, 762 F.2d at 907; *3201 Caughey Road*, 715 F.Supp. at 133; *3400–3410 W. 16th Street, supra*, 636 F.Supp. at 146.

■ It is evident from the case law that the quantum of proof which a claimant must produce in support of his or her innocent ownership defense in order to defeat the government's motion for summary judgment is dependent upon the particular facts and circumstances which are before a court at the time that the motion is decided. For example, in *United States v. Buti Lounge, Inc.*, 1988 WL 40794 (N.D.Ill. April 22, 1988) (Kocoras, J.), the government sought forfeiture of a lounge owned by a corporate claimant. The government moved for summary judgment based upon evidence that the manager of the lounge had sold cocaine on the premises on multiple occasions. The president and sole shareholder of the corporation which owned the property asserted the innocent ownership defense, and filed an affidavit stating that she had no knowledge of and did not consent to the drug transactions. The district court denied the government's motion, finding the claimant's simple denial of knowledge that narcotics activity had taken place on the property in question sufficient to preclude summary judgment. "[A]side from its manager-agent relationship, the government has not presented any evidence that would tend to show knowledge of the transactions by the corporation." *Id.* at *2. Thus, because there was not sufficient evidence before the court in *Buti Lounge* to support an initial inference that the corporation had actual knowledge of the drug transactions, the corporation's simple denial of knowledge in an affidavit was sufficient to satisfy the claimant's burden to come forward with evidence in support of the innocent ownership defense, and thus to defeat the government's motion for summary judgment.

Similarly, in *One 1985 BMW 318i*, 696 F.Supp. at 346, the district court denied the government's motion for summary judgment in a civil forfeiture proceeding brought against a car which had been used in narcotics activity, in view of the claimant's affidavit asserting no knowledge that the car had been used by her husband and his friend to transport drugs. The government's evidence consisted primarily of an affidavit signed by a purported co-conspirator of the claimant's husband which asserted that the claimant had been aware of the drug transactions. The court found that because the government's evidence merely presented an issue of credibility as to who to believe—the co-conspirator or the claimant—the claimant's affidavit was sufficient to raise a question of fact and thus overcome the government's motion for summary judgment. *Id.* at 345. At the same time, the claimant's affidavit was insufficient, in light of the co-conspirator's contrary affidavit, to enable the claimant to prevail on her own motion for summary judgment. *Id.* at 346.

■ In both of the above cases, there was a lack of objective evidence tending to show that the claimant actually knew of the drug-related activity. In this context, the courts found that a claimant's affidavit denying knowledge of the drug transaction on his or her property was sufficient to raise an issue of material fact with respect to the innocent ownership defense, and thus to overcome the government's motion for summary judgment. However, as the decisions of other courts reflect, when the government supplies facts which give rise to a reasonable inference that the claimant was aware of narcotics activity, the claimant opposing summary judgment bears a correspondingly greater burden to come forward with evidence which meets that inference.

For example, in *U.S. v. One Single Family Residence Located at 2901 S.W. 118th Court, Miami, Fla.,* 683 F.Supp. 783, 791 (S.D.Fla.1988), the district court held that a claimant's conclusory assertion of lack of knowledge was insufficient to overcome objective evidence tending to show awareness of drug-related activity. The claimant in this case was a bail bond company which had taken a mortgage interest in a home as security for a bond on an individual charged with having possessed cocaine with an intent to distribute. The government sought forfeiture of the home on the ground that it was used for or derived from narcotics activity, and moved for summary judgment. In opposition to the government's motion, the bail bond company submitted an affidavit from its agent asserting that the company had been unaware of and did not consent to the illicit activity. However, the government presented evidence that the company's agent had been present at the bond hearing when the homeowner was formally charged with the possession of cocaine in his home. On this record, the court granted the government's motion for summary judgment and held the bond company's interest in the home subject to forfeiture. The court reasoned that the bond company, having been represented at the bond hearing and thus placed on notice of the charge asserted against the individual it bonded, was unable to demonstrate a material dispute of fact with respect to its knowledge of the narcotics activity by means of the simple assertion of ignorance. *Id.* at 788. The court observed that if the bond company had acted reasonably, it would have made itself fully aware of the allegations against the property owner, and such an inquiry would have provided ample cause for concern that the house was subject to forfeiture. *Id.* at 789. In other words, the claimant could not pass as an innocent owner "merely by hiding its head in the sand." *Id.*

The circumstances and holding in *One Single Family Residence* suggest that when the government has presented objective evidence make it reasonable to infer that the claimant was aware of the illicit activity in question, the claimant is required to do more than simply deny knowledge in an affidavit in order to defeat the government's motion for summary judgment. Rather, the claimant must put forth facts which tend to show that, despite the government's evidence, the claimant actually had no knowledge of such activity.

The district court's discussion in *One Single Family Residence* of the steps which the claimant should have taken to make itself aware of the events giving rise to the forfeiture might also suggest that the innocent ownership defense is unavailable to the claimant who had constructive knowledge of the illicit activity in question, *i.e.,* that the claimant who "*should* have known" about the illicit activity is not an innocent owner. However, at least one court of appeals has explicitly rejected the notion that the innocent ownership defense is governed by a constructive knowledge standard.

In *United States v. $4,255,625.39, supra,* 762 F.2d at 907, *aff'g* 551 F.Supp. 314 (S.D. Fla.1982), the Eleventh Circuit rejected the claimant's assertion that the district court had improperly rebuffed his innocent ownership defense on the grounds that he "knew or *should have known*" that the money at stake in the case was drug-generated. The appellate court agreed that the innocent ownership defense "turns on the claimant's *actual* knowledge, not constructive knowledge." *Id.* (emphasis supplied). *Accord United States v. One Parcel of Real Estate Located on Fellows Tracts C, D, E, and F of Pine Island Estates,* 715 F.Supp. 360, 362 (S.D.Fla.1989) ("The government's contention that the innocent owner defense is not available to a claimant having constructive notice of the alleged illegal activity and possible forfeiture claims is erroneous.") Nonetheless, the court of appeals found that the court below had properly applied the actual knowledge standard to the claimant's innocent ownership defense and entered summary judgment against the claimant based upon evidence sufficient "to support an inference that [the claimant] had actual knowledge of the drug taint." *Id.* In this respect, the

appellate court noted evidence that the claimant had on several occasions voiced his suspicion that money he was receiving was drug-generated and had sought a loan to protect funds in a bank account from forfeiture. *Id.* & n. 25. The court agreed with the trial court that " 'where it is *reasonable to believe* that an owner of property is aware that the property is the proceeds of narcotics transactions or involved in the narcotics exchange business, that owner is not an innocent owner.' " *Id.* at 906, *quoting* 551 F.Supp. at 323 (emphasis supplied).

Like *One Single Family Residence,* *$4,255,625.39* suggests that when there is objective evidence in the record sufficient to support an inference of the claimant's actual knowledge, the claimant must do more than simply deny knowledge in order to meet his or her burden of proof. In order to sustain his burden with regard to the innocent ownership defense, the claimant must come forward with evidence sufficient to raise a triable question as to whether he lacked actual knowledge in order to overcome reasonable inferences to the contrary. *See* 762 F.2d at 906–07.[11]

Thus, the greater the amount of evidence tending to show that the claimant had actual knowledge of the proscribed drug-related activity, the more difficult it becomes for a claimant to raise a material issue of fact as to whether or not he lacked knowledge and thus survive the government's motion for summary judgment. As in *One Single Family Residence,* courts have sometimes captured this concept in observing that a claimant who maintains ignorance despite ample notice of the illicit activity in question could only have remained ignorant by "sticking his head in the sand".

*See* 683 F.Supp. at 789; *United States v. 1980 Red Ferrari, supra,* 827 F.2d at 480. *See also One 1985 BMW 318i,* 696 F.Supp. at 346. In *Red Ferrari,* the Circuit Court upheld the district court's determination, on the parties' cross-motions for summary judgment, that an automobile which had been purchased with the proceeds of drug transactions was forfeitable. The claimant, a private investigator, had purchased the automobile from an attorney with whom he was socially and professionally involved. The attorney represented a drug trafficker, Felix Mitchell, and had hired the claimant to assist her in defending Mitchell, first on a murder charge and later on heroin-related charges. At one point during the defense preparation, the claimant, at the attorney's request, retrieved the Ferrari from another city, insured it in Mitchell's name, and had the premium billed to the attorney's law practice. Some time after he did so, the claimant purchased the car from the attorney. When the government later sought forfeiture of the Ferrari, the claimant asserted he was unaware that Mitchell had been the original owner and that the car might have been purchased with drug-tainted funds. The district court concluded that in these circumstances, the claimant could only have avoided knowledge of the connection between the automobile and the narcotics activity by "sticking his head in the sand." *See id.* at 480. The court of appeals agreed. "By virtue of his social and professional entanglement in Mitchell's affairs, [the claimant] was at least *on notice* of Mitchell's connection to the vehicle." *Id.* (emphasis supplied). The court further agreed with the district court that an evidentiary hearing as to the extent

**11.** It should be noted that the district court in *$4,255,625.39* rendered its ruling after a trial, rather than upon a motion for summary judgment. Nonetheless, the case is relevant here for the following reason. Although the court of appeals disavowed the application of a constructive knowledge standard to the claimant's innocent ownership defense, it nonetheless approved a rejection of the defense based upon reasonable inferences of actual knowledge which could be drawn from the evidence. 762 F.2d at 906. It is evident that to a significant degree, this holding was based in part upon the shifting burdens of proof which govern forfeiture actions, for the court stressed that it is not the government's burden in these actions to prove existence of actual knowledge, but the claimant's burden to prove the absence of actual knowledge. *Id.* at 906–07. Thus, the case serves to highlight the insufficiency of an innocent ownership defense which is based solely upon a disclaimer of knowledge, in the face of evidence which makes it reasonable to infer that the claimant was in fact aware that illicit activity was afoot.

of the claimant's knowledge of the vehicle's prior ownership would have been a "waste of time," and that summary judgment was therefore proper. *Id.*

 In sum, the evidentiary burden to which courts hold a claimant seeking to overcome the government's motion for summary judgment varies depending on the circumstances of the case. Normally, courts must view all of the evidence presented on a motion for summary judgment in the light most favorable to the non-moving party. *E.g., Federal Deposit Ins. Corp. v. Nanula,* 898 F.2d 545, 548 (7th Cir.1990). However, the foregoing cases suggest that in forfeiture actions, if a court finds it reasonable to infer from the objective evidence that the claimant had or must have had actual knowledge of the drug transaction, then the claimant cannot meet his or her burden of proof in opposing summary judgment simply by asserting ignorance. In other words, although courts have maintained that an innocent ownership defense turns on a claimant's *actual,* and not constructive, knowledge of the illicit activity which gave rise to the forfeiture action, *see $4,255,625.39* at 907, if the evidence supports a "reasonable inference" of actual knowledge and the claimant fails to come forward within anything more than a naked protestation that he or she really didn't know of the illicit activity, the claimant's defense of innocent ownership fails, *see id.* and *Red Ferrari,* 827 F.2d at 480. *See also United States v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborough, Conn.,* 897 F.2d 97, 102 (2d Cir.1990) (claimant's bare denial of knowledge insufficient to preclude summary judgment; in light of overwhelming evidence tending to show that claimant was aware of husband's drug trafficking, claimant was required to supply "more detailed factual substance in support of her claim of ignorance").

 This Court has carefully reviewed all of the evidence which has been submitted by the government and the claimants. As detailed above, the Serratos have submitted affidavits in which they claim they had no knowledge that their property was being used to facilitate drug transactions prior to the September 12, 1987 drug seizures and arrest of Raul Serratos. Were it to follow the foregoing case law, the Court might be inclined to find, in the face of evidence showing that there was a pattern of open and extensive narcotics-related activity occurring on the claimants' property, that the Serratos' assertions of ignorance were simply not enough to raise a triable issue of fact as to their innocent ownership defense. However, after careful review of the body of admissible evidence presently before it, the Court is compelled to conclude that the Serratos' affidavits are sufficient to establish a genuine issue of fact as to their knowledge of the drug-related activity occurring on their property.

 The government strenuously argues that because it has already demonstrated to the satisfaction of the Court that probable cause exists to warrant forfeiture of the property, the Serratos must do more than simply deny knowledge of the illicit activity on their property in order for their defense of innocent ownership to survive summary judgment. The flaw in this argument is that it ignores the minimal evidentiary threshold which the government must cross in order to establish probable cause— more than "mere suspicion" but less than prima facie proof of wrongdoing. *See One 1985 BMW 318i,* 696 F.Supp. at 339, 341– 42; *3400–3410 West 16th Street,* 636 F.Supp. at 146. Without question, when the government moves for summary judgment in a forfeiture proceeding and it carries its initial burden to establish probable cause, the burden rests upon a claimant invoking the innocent owner defense to come forward with some evidence showing that he or she was unaware of and did not consent to the conduct on which the forfeiture action is based. *See One 1985 BMW 318i,* 696 F.Supp. at 344. However, evidence which suffices only to establish probable cause to warrant the forfeiture will not by itself impose upon the claimant the duty to support his or her innocent ownership defense in the rigorous detail which the government demands in this case.

Where courts have granted the government's motion for summary judgment in forfeiture cases despite the claimant's assertion of ignorance, they have done so because the government has presented so much evidence from which the claimant's actual knowledge can be inferred that the claimant's unsupported assertion of ignorance is simply implausible. *See, e.g., 15 Black Ledge Drive*, 897 F.2d at 102; *One 1980 Red Ferrari*, 827 F.2d at 480. *See also One 1985 BMW 318i*, 696 F.Supp. at 346 (distinguishing such cases on their facts). The government has not done so in this case. The verified complaint, though sufficient to establish probable cause, is skeletal. It reveals only that narcotics were seized from the first floor tavern and second floor residence at the defendant property on September 12, 1987, that Raul Serratos was arrested on that date, that narcotics were seized from the premises on other, unspecified occasions, and that Gerrardo Serratos, a resident of the property, had previously been arrested and found to be in the possession of marijuana. The complaint does not specify the dates of the four other narcotics seizures, nor does it further detail the circumstances of either these seizures or the one which took place on September 12, 1987.[12] At the same time, the government has failed to come forward with any evidence which puts flesh upon the bones of its complaint. The information set forth in the police reports offers considerable detail as to the incidents referenced in the complaint, but the reports are unauthenticated, are plainly hearsay, and have not been shown to be admissible pursuant to any exceptions to the hearsay rule. Thus, the Court cannot consider them on a motion for summary judgment. *Cf. United States v. Parcel of Real Property Known as 6109 Grubb Road, Mill-Creek Tp., Erie County, Pa., supra*, 886 F.2d at 621–23 (error for district court to consider hearsay evidence with respect to claimant's innocent ownership defense); *Heritage Mutual Ins. Co. v. Smith Truck Brokerage, Inc.*, 1985 WL 398 (N.D.Ill. May 9, 1985) (Plunkett, J.) (even where police report had been authenticated, it would not be considered on motion for summary judgment absent more information as to source of information set forth in report).[13] Standing alone, the minimal allegations of the verified complaint do not suffice as objective evidence from which an inference reasonably may be drawn that the Serratos had actual knowledge of the drug-related activity which was taking place on their property. Consequently, the assertions which both Mr. and Mrs. Serra-

---

**12.** The government suggests that because Mr. Serratos was arrested on September 12, 1987, he bears a duty to be more specific as to his unawareness of the conduct which led to the seizure of drugs and his arrest on that date. (Gov't Reply Mem. at 3.) Without knowing more about the circumstances of his arrest, however, the Court is unprepared to deem insufficient as a matter of law Mr. Serratos' claim that he did not know narcotics had been sold, used or stored on the property. Nor does the Court agree that it is Mr. Serratos' duty to detail the circumstances of his arrest when the government itself has not done so either in the complaint or in its motion for summary judgment. (*See id.*) However great the claimant's evidentiary burden may be in opposing the government's motion for summary judgment, it does not include the duty to flesh out the government's case first before proceeding to proffer evidence of his or her lack of knowledge. Had the government come forward with evidence indicating that at the time of his arrest, Mr. Serratos was observed using or selling narcotics, the Court would likely have agreed that Mr. Serratos was under a greater duty to explain the circumstances of his arrest and offer evidence tending to show his unawareness of the narcotics-related activity taking place on the defendant property. However, neither the complaint nor any evidence which the government has submitted provides any clue as to why and under what circumstances Mr. Serratos was arrested. In this context, the corresponding lack of detail in Mr. Serratos' affidavits as to the nature of his arrest is not fatal to his innocent ownership defense.

**13.** Hearsay evidence such as police reports may be considered in making a probable cause determination. *E.g., United States v. 1964 Beechcraft Baron Aircraft, TC 740*, 691 F.2d 725, 728 (5th Cir.1982), *cert. denied sub nom. Preston v. United States*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); *United States v. One Single Family Residence Located at 6960 Miraflores Ave., Coral Gables, Florida*, 731 F.Supp. 1563, 1565 n. 5 (S.D.Fla.1990). Because such a determination has already been made in this case, however, the reports may not be considered in deciding the government's motion for summary judgment.

tos have made in their affidavits as to their lack of knowledge are sufficient to raise a genuine issue of fact and thereby defeat the government's motion for summary judgment. *Cf. United States v. All That Lot of Ground Known as 2511 E. Fairmont Ave., Baltimore, Md.,* 722 F.Supp. 1273, 1281 (D.Md.1989) (deposition testimony of claimants asserting ignorance sufficient to create issue of fact for trial, despite substantial evidence tending to indicate knowledge). However summary forfeiture proceedings may be, *see 3120 Banneker Drive,* 691 F.Supp. at 499, they do not impose upon a claimant who invokes the innocent owner defense the onerous task of attempting to counter in detail whatever inferences of knowledge might be drawn from evidence which the government has not yet placed before the Court. *See United States v. One Parcel of Real Property, Lot 4, Block 5 of Eaton Acres,* 904 F.2d 487, 492 (9th Cir.1990) ("While the forfeiture statute gives the government a very substantial *procedural* advantage, it does not give it a *substantive* advantage; where conflicting evidence is presented, the government must subject its case to the judgment of a trier of fact. . . .") (emphasis in original).

## 2. *Evidence Concerning Consent*

Having concluded that the Serratos have succeeded in demonstrating a triable issue of fact with respect to the knowledge aspect of their innocent ownership defense, the Court must consider whether they must also demonstrate a lack of consent to the narcotics-related activity, and if so what such a showing entails. Few courts have addressed the consent component of the § 881(a)(7) innocent ownership defense. However, those that have considered it have taken different positions as to what this element requires of the claimant.

A threshold question with respect to the issue of consent is whether a claimant who proves that he or she did not have knowledge of wrongful activity must also show that he or she did not consent to such activity; that is, does § 881(a)(7) require the claimant to show the lack of *both* knowledge and consent, or simply the lack

of one or the other. On this point, the courts are divided. The Second and Third Circuits have held that the statute only requires the claimant to prove that he or she lacked either knowledge *or* consent, not both. *United States v. 141st St. Corp.,* 911 F.2d at 877, 878 (collecting cases); *6109 Grubb Road,* 886 F.2d at 626. These courts have relied to some degree upon the use of the disjunctive "or" in the statutory provision for the innocent ownership defense. *See* 911 F.2d at 878, 886 F.2d at 626. However, the Ninth Circuit, relying upon a congressional joint committee report which suggests an intent to hold property subject to forfeiture if its owner either knew of or consented to illegal conduct, has held that the claimant must prove the lack of both knowledge *and* consent in order to prevail under § 881(a)(7). *See United States v. One Parcel of Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4), Waipouli, Kapaa, Island and County of Kauai, State of Hawaii,* 902 F.2d 1443, 1445 (9th Cir.1990).

A second question arises as to what exactly the consent prong of the § 881(a)(7) innocent ownership defense requires the innocent owner to prove. As the Court has observed at note 10, *supra,* when a claimant's innocent ownership defense is grounded not in a statutory provision like § 881(a)(7) but in the Supreme Court's dicta in *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 689-90, 94 S.Ct. 2080, 2094-95, 40 L.Ed.2d 452 (1974), courts have required the claimant to show not only a lack of knowledge of the wrongful conduct, but also reasonable steps to prevent such conduct from taking place on the property. Courts applying § 881(a)(7) have disagreed as to whether the reasonable efforts requirement of *Calero-Toledo* should be imported into the consent component of the statutory innocent ownership defense. The Court of Appeals for the Sixth Circuit has concluded that it should not. *See United States v. Lots 12, 13, 14, and 15, Keeton Heights Subdivision, Morgan County, Ky.,* 869 F.2d 942, 947 (6th Cir.1989). It appears that the 11th Circuit may be in agreement with this position. *See United*

*States v. $4,255,625.39, supra,* 762 F.2d at 906 n. 24 ("Because *Calero–Toledo* did not involve the statutory 'innocent owner' defense contained in 21 U.S.C. § 881(a)(6), we question the government's invocation of the *Calero–Toledo* dicta in this case."); *see also United States v. One Parcel of Real Estate Consisting of Approximately 4,657 Acres, Located in Martin County, Fla., supra,* 730 F.Supp. at 427–28. The Second Circuit has taken a contrary position, however, reasoning that Congress' failure to expressly incorporate a reasonable efforts requirement into § 881(a)(7) does not preclude the courts from nonetheless reading such a requirement into the consent provision of the statute. *141st St. Corp.,* 911 F.2d at 879. The court explained:

> We find the *Calero–Toledo* standard appropriate for section 881(a)(7) forfeiture cases because, when combined with our construction of the phrase "knowledge or consent," it provides a balance between the two congressional purposes of making drug trafficking prohibitively expensive for the property owner and preserving the property of an innocent owner. A claimant with knowledge of the illegal use to which his property is put may defend on the basis of lack of consent, but consent in this situation must be something more than a state of mind. The illicit sale and use of drugs is taking an ever increasing toll on our nation. These activities affect almost every aspect of modern existence, particularly in large urban centers like New York City. Given the present circumstances, defining "consent" in section 881(a)(7) as the failure to take all reasonable steps to prevent illicit use of premises once one acquires knowledge of that use is entirely appropriate.

*Id.* at 879. The Third Circuit has reserved opinion as to the applicability of *Calero–Toledo* in § 881(a)(7) forfeiture cases. *See 6109 Grubb Road,* 886 F.2d at 627.

Neither of these issues appears to have been addressed by courts in this circuit. Moreover, although each has a significant bearing upon the Serratos' defense in this case, for the most part they have not been addressed by the parties. As to the first of the two matters, the Serratos have urged the Court to adopt the position that they need only prove the lack of knowledge or consent, rather than the lack of both. (Claimants' Mem. at 2–3.) However, the government has not responded to this argument. With respect to the second issue, the parties appear to assume that the consent provision of the statute requires the Serratos to show that they took all reasonable steps to prevent narcotics-related activity from occurring on their property (*see* Claimants' Supp.Mem. at 2; Gov't Reply Mem. at 3), but this question has not been confronted directly in the briefing.

Both questions will have to be resolved prior to trial; however, neither affects the outcome of the government's motion for summary judgment. Even if the Court assumes that the Serratos must prove their lack of consent to the drug-related activity as well as their lack of knowledge, and that this requires them in turn to show that they took all reasonable steps to prevent such activity from taking place on their property, the evidence which the Serratos have presented is sufficient to preserve their innocent ownership defense. The claimants' affidavits describe the efforts which they took to prevent the storage, use, or sale of narcotics on the premises, and these have been summarized above. The government has cited no particular shortcoming in the claimants' efforts, and given the present lack of admissible, non-hearsay evidence in the record as reflecting the nature and extent of narcotics-related activity which occurred on the defendant property, the Court finds the claimants' showing sufficient to raise a triable issue of fact as to their lack of consent to this activity.

## IV. SUMMARY

For the reasons set forth above, the government's motion for summary judgment is denied. The Court will conduct a status hearing in this matter on October 2, 1990 at 9:30 a.m. in order to ascertain how the parties plan to proceed in light of the Court's ruling.